The STATE of Ohio, Appellee,

v.

CLELLAND, Appellant.

[Cite as *State v. Clelland* (1992), 83 Ohio App.3d 474.]

Court of Appeals of Ohio,
Hocking County.

No. 91CA9.

Decided Nov. 5, 1992.

476

478

*Charles A. Gerken,* Hocking County Prosecuting Attorney, for appellee.

*Richard M. Wallar,* for appellant.

HARSHA, Judge.

Jimmie Clelland, defendant-appellant, appeals from a judgment of conviction and sentence entered following a bench trial by the Hocking County Court of Common Pleas finding him guilty of burglary in violation of R.C. 2911.12(A)(1), an aggravated felony of the second degree.

Appellant assigns the following errors:

"I.   The trial court erred in failing to suppress the statements of the defendant and the evidence seized from the defendant, in that the state failed to prove that the defendant made a knowing and voluntary waiver of his Fifth and Sixth Amendment U.S. constitutional rights.

"II.   The trial court erred in ruling that the state could prosecute the defendant in different jurisdictions for several offenses which arose from 'a course of criminal conduct.'

"III.   The trial court erred in finding the defendant guilty of aggravted [*sic* ] burglary in that the evidence failed to establish the element of trespass on the part of the defendant/appellant."

On July 9, 1990, appellant was indicted on one count of burglary.  Appellant entered a plea of not guilty to the charge and subsequently filed a notice of alibi as well as motions to suppress all statements made by him to law enforcement officers on June 29, 1990 and all physical evidence seized from appellant's motor vehicle.  Following a hearing on appellant's suppression motions, the trial court overruled the motions.  Appellant then filed a motion to dismiss the indictment on the basis of double jeopardy.  He argued that a prior conviction by the

Fairfield County Court of Common Pleas for receiving stolen property acted to bar the burglary proceeding in Hocking County since both offenses were committed as part of the same course of criminal conduct. Following a hearing on appellant's dismissal motion, the trial court filed a detailed entry overruling the motion.

A bench trial produced the following pertinent evidence. Gerali Miller and Ronald Green shared a residence in New Plymouth, Hocking County, Ohio. On June 28, 1990, while Miller was in Columbus at her boyfriend's mother's home, Green learned that his grandfather had passed away. He asked appellant, who had been his friend for several years, to drive him from his residence to his mother's house in Lancaster, Fairfield County, Ohio. Appellant and Doak Vickroy picked Green up at his residence in Hocking County and dropped Green off at his mother's house in Lancaster. Appellant and Vickroy then drove back to Miller and Green's residence in Vickroy's van and, without permission from them, entered their home and stole several items of personal property. Appellant and Vickroy then divided the stolen property, with appellant placing his share in his car and driving to his home in Bremen, Ohio.

Shortly thereafter, Green returned to his residence, discovered that it had been burglarized, and contacted Miller. Green and Miller went to appellant's home and observed Miller's stolen stereo speakers in plain view in the backseat of appellant's car. After the Hocking County and Fairfield County sheriffs' departments were contacted, Fairfield County deputy sheriffs arrested appellant at his place of employment in Lancaster on an outstanding bench warrant concerning a traffic citation and brought him to his car, where Miller and Green were present and had already identified the stolen items in plain view within appellant's car.

According to Fairfield County Deputy Sheriff Rick Sanders, he and Deputy Hopke advised appellant of his *Miranda* rights, which appellant waived, and requested permission from him to search the car. Appellant signed a written "permission to search" form, and the officers then proceeded to remove from appellant's car several items which had been stolen from Miller and Green's residence.

Hocking County Deputy Sheriff Thomas Wheeler then gave *Miranda* warnings to appellant, who signed a form waiving his rights. Appellant wrote, at 10:30 p.m. on June 29, 1990, a statement confessing to the burglary. On June 30, 1990, appellant gave another written confession to the burglary. Appellant testified that he had been given permission by Green to enter the Miller–Green residence on other occasions, although he admitted that Green had never given him permission to enter the house for the purpose of stealing Green's property. On February 25, 1991, the trial court entered a judgment which found appellant

guilty of burglary as specified in the indictment and sentenced him to an indefinite prison term of three to fifteen years with a $750 fine.

■ Appellant's first assignment of error asserts that the trial court erred in failing to suppress his statements and evidence seized from him where appellee failed to prove that he had made a knowing and voluntary waiver of his constitutional rights. In a hearing on a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Clay* (1972), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137; *State v. Warren* (Aug. 12, 1991), Hocking App. No. 90CA7, unreported, 1991 WL 156521. Accordingly, in our review, we are bound to accept the trial court's findings of fact and determinations regarding credibility if they are supported by competent, credible evidence. *State v. Dreher* (July 28, 1992), Highland App. No. 786, unreported, 1992 WL 188501; see, also, *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. See *State v. Shelpman* (May 23, 1991), Ross App. No. 1632, unreported, 1991 WL 87312; *State v. Simmons* (Aug. 30, 1990), Washington App. No. 89CA18, unreported, 1990 WL 127065.

Appellant contends that evidence seized from the search of his car and his statements to police should have been suppressed where *Miranda* warnings did not precede the search of his car, his permission to the automobile search was not voluntarily given, he was not completely advised of his *Miranda* rights, he did not understand them, and he did not voluntarily waive them.

■ Initially, we will consider the propriety of the search of appellant's automobile. Generally, searches conducted without judicial warrant are *per se* unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions. See *State v. Johnston* (1990), 64 Ohio App.3d 238, 246, 580 N.E.2d 1162, 1167, citing *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. One such exception is based on consent, and the state has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given. *Johnston, supra*, at 246–247, 580 N.E.2d at 1168, citing *Florida v. Royer* (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229.

■ In order to waive his Fourth Amendment privilege against unreasonable searches and seizures, the accused must give a consent which is voluntary under the totality of all the surrounding circumstances. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854; *State v. Childress* (1983), 4 Ohio St.3d 217, 4 OBR 534, 448 N.E.2d 155, paragraph one of the syllabus; *State*

*v. Rutter* (1990), 68 Ohio App.3d 638, 641, 589 N.E.2d 421, 422. Appellant contends that since *Miranda* warnings were not given to him prior to the search of the car, his consent was involuntary. He also asserts that since he only gave permission to search his car to the Fairfield County officers after the officers told him that if he did not consent, they would obtain a search warrant, his consent was involuntary.

The weight of authority holds that prior *Miranda* warnings are not required to validate consent searches, even when the consent is obtained after the defendant is effectively in custody. See, *e.g., State v. Austin* (1976), 52 Ohio App.2d 59, 6 O.O.3d 43, 368 N.E.2d 59. Even though consent obtained after arrest may be suspect, the fact of arrest does not necessarily vitiate what otherwise appears to be a valid consent; in other words, the dispositive question is whether the officers used coercive tactics or took unlawful advantage of the arrest situation to obtain consent. *United States v. Jones* (C.A.5, 1973), 475 F.2d 723, 730. Therefore, the mere absence of *Miranda* warnings after the arrest and prior to the search did not invalidate the consent search.

We move now to appellant's other argument that his consent was not voluntary because it was only given after the officers threatened to obtain a search warrant if he did not consent. Where the record clearly reveals no coercion and a police officer does not falsely claim possession of a search warrant, but rather candidly informs a person why a search is needed, either with his consent or with a search warrant, and the person clearly understood that he had a constitutional right to withhold consent, a finding of voluntariness is appropriate. *State v. Danby* (1983), 11 Ohio App.3d 38, 11 OBR 71, 463 N.E.2d 47; see, also, *State v. Simmons* (1989), 61 Ohio App.3d 514, 573 N.E.2d 165.

In the instant case, Deputy Wheeler testified at the suppression hearing that he believed that appellant's arrest and the search of his vehicle took place simultaneously and that appellant signed a search consent form. Appellant testified that he permitted the police to search his car since they advised him that if he did not consent, they would obtain a warrant. At that time, some of the stolen items had already been identified by the burglary victims since they were in plain view in appellant's car. The "permission to search" form which appellant signed included the following language:

"I am giving this written permission to these officers *freely and voluntarily, without any threats or promises* having been made, *and after having been informed by said officer that I have a right to refuse* this search and/or seizure." (Emphasis added.)

Pursuant to the applicable authority, the trial court did not commit error in determining that the suppression hearing evidence was sufficient to indicate that appellant's consent to the search was voluntarily given.

Appellant next argues that he was not completely advised of his *Miranda* rights prior to giving written statements to the officers. Appellant testified at the suppression hearing that he was not advised that he had a right to talk to a lawyer prior to making his statements. Prior to any custodial interrogation, a person must be warned that he has a right to remain silent, that any statement he does make may be used against him and that he has a right to the presence of retained or appointed counsel during questioning. *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706, 36 O.O.2d 237, 241. At the suppression hearing, appellant subsequently admitted in his testimony that the waiver of rights forms he signed explicitly indicated that he had a right to talk to a lawyer prior to making statements. Additionally, the two written waiver forms were signed by appellant on 8:00 p.m. and 10:30 p.m. on June 29, 1990, *i.e.,* prior to the June 29, 1990 and June 30, 1990 written confessions of appellant which were admitted at trial. Accordingly, there is sufficient evidence in the record to indicate that appellant was advised of all of his *Miranda* rights.

Appellant's final argument under his first assignment of error is that there was no evidence in the record to indicate that he either understood the *Miranda* warnings or that he voluntarily waived them. A person may waive the rights outlined in *Miranda* provided that such waiver is made voluntarily, knowingly, and intelligently. See, *e.g., Michigan v. Tucker* (1974), 417 U.S. 433, 444, 94 S.Ct. 2357, 2363, 41 L.Ed.2d 182, 193. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that *Miranda* rights have been waived. *Colorado v. Spring* (1987), 479 U.S. 564, 573, 107 S.Ct. 851, 856, 93 L.Ed.2d 954, 965. In the case *sub judice,* although appellant testified that he only possessed a tenth grade education and that he was in special education classes from the first grade until the tenth grade, on one of the forms he signed waiving his *Miranda* rights he noted that he was capable of reading and writing. In both waiver forms, it was noted that he understood his rights. Deputy Sheriff Wheeler testified at the suppression hearing that appellant appeared to understand his *Miranda* rights. Under the totality of the circumstances, which is often considered to be a factual issue, see *Simmons, supra,* 61 Ohio App.3d at 516, 573 N.E.2d at 166, it is apparent that there exists competent, credible evidence to support the trial court's implicit conclusion that appellant voluntarily, knowingly, and intelligently waived his *Miranda* rights prior to giving the written confessions. Therefore, since the trial court's entry overruling

appellant's motions to suppress is supported by both the evidence admitted at the suppression hearing as well as applicable legal authority, appellant's first assignment of error is overruled.

Appellant's second assignment of error asserts that the trial court erred in ruling that appellee could prosecute him in different jurisdictions for several offenses which arose from a single course of criminal conduct. On November 20, 1990, in case No. 90–CR–JY–0121 in the Fairfield County Court of Common Pleas, appellant entered a guilty plea to a bill of information charging him with one count of receiving stolen property in violation of R.C. 2913.51. At the hearing, the Fairfield County Assistant Prosecuting Attorney stated:

"Frankly, Your Honor, what I believe the facts to be are that there was a burglary in Hocking County which the State may or may not be able to prove the Defendant was involved in. I don't know whether he did that crime or not. But there is no doubt in my mind that he received some of the proceeds from that same burglary in our county. And that's what our charge is. We have a very strong case against him and that's why he's willing to enter a plea in this county. And I'll leave it to his Hocking County lawyer and the Hocking County Prosecutor to decide whether there's a double jeopardy problem or not. But I still think our recommendation is fair. And I have numerous letters in my file to Hocking County trying to resolve the issue."

The Fairfield County Court of Common Pleas accepted appellant's guilty plea to the receiving stolen property charge and while the Hocking County burglary charge which is the subject of this appeal was still pending, it sentenced appellant to one year in jail on that charge.[1]

Following a hearing, the trial court overruled appellant's motion to dismiss the burglary charge on double jeopardy grounds. The entry overruling the motion noted in part that burglary and receiving stolen property were not allied offenses of similar import since "it is obvious that burglary is always completed before the intruder ever touches the items made the subject of the receiving charge."

Appellant contends that the trial court erred in overruling his dismissal motion and relies on *State v. Urvan* (1982), 4 Ohio App.3d 151, 4 OBR 244, 446 N.E.2d 1161, in support of his second assignment of error. When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all of those offenses in any jurisdiction in which one of those offenses occurred. R.C. 2901.12(H). In *Urvan*, the Eighth District Court of Appeals held that once one jurisdiction takes action first, it preempts venue and

---

1. The court subsequently suspended the sentence and placed appellant on five years' probation.

jurisdiction for the whole matter, and jeopardy must attach as a result of the activity of the first actor. See, also, *State v. DeLong* (1990), 70 Ohio App.3d 402, 591 N.E.2d 345. In reaching their holdings, the *Urvan* (theft and receiving stolen property) and *DeLong* (robbery and receiving stolen property) courts emphasized that the offenses involved were allied offenses of similar import pursuant to R.C. 2941.25. See, *e.g., DeLong, supra,* 70 Ohio App.3d at 405, 591 N.E.2d at 346, where the Tenth District Court of Appeals stated that "[a]ny possible question stemming from one jurisdiction's failure to include another available charge in its prosecution is resolved by R.C. 2941.25, which requires an election between convictions for allied offenses when the state chooses to pursue both." Pursuant to *Urvan* and *DeLong,* we must consider whether the offenses here are allied offenses of similar import pursuant to R.C. 2941.25. This was the crux of the Supreme Court of Ohio's decision in *Maumee v. Geiger* (1976), 45 Ohio St.2d 238, 244, 74 O.O.2d 380, 383, 344 N.E.2d 133, 137, as cited in both *Urvan* and *DeLong,* where it held that these cases involve "statutory construction" of R.C. 2941.25.[2]

The applicable test for determining whether two offenses are allied offenses of similar import is as follows:

" * * * In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." *State v. Hill* (1992), 64 Ohio St.3d 313, 331–332, 595 N.E.2d 884, 899; *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 549 N.E.2d 520, syllabus.

Applying the foregoing test, it is apparent that in comparing the elements of burglary in R.C. 2911.12(A), and receiving stolen property in R.C. 2913.51(A), they do not correspond to such a degree that the commission of one crime will necessarily result in the commission of the other. Accordingly, burglary (or aggravated burglary) and receiving stolen property are not allied offenses of similar import under R.C. 2941.25, and multiple convictions are not prohibited by double jeopardy considerations. *State v. Nolan* (Feb. 13, 1991), Montgomery App. No. 12094, unreported, 1991 WL 19367 (burglary and receiving stolen property); *State v. Comen* (Jan. 5, 1989), Franklin App. No. 88AP–660,

---

**2.** In *Maumee,* the Supreme Court of Ohio held that a person may not be guilty of theft *and* the separate offense of receiving the same property.

unreported, 1989 WL 725 (aggravated burglary and receiving stolen property); *State v. Searles* (Aug. 10, 1988), Hamilton App. No. C–870523, unreported, 1988 WL 83498 (aggravated burglary and receiving stolen property); cf., also, *State v. Mitchell* (1983), 6 Ohio St.3d 416, 6 OBR 463, 453 N.E.2d 593 (aggravated burglary and theft). Where the offenses committed in different counties are not allied offenses of similar import, *Urvan* and *DeLong* are inapposite. *State v. Thier* (June 21, 1989), Hamilton App. No. C–880271, unreported, 1989 WL 65745; cf. *State v. Liston* (1991), 70 Ohio App.3d 663, 591 N.E.2d 879.

In *Mitchell,* the Supreme Court of Ohio held at its syllabus that the elements of aggravated burglary, R.C. 2911.11(A), and theft, R.C. 2913.02(A), do not correspond to such a degree as to constitute allied offenses of similar import under R.C. 2941.25(A). R.C. 2941.25 is Ohio's codification of the judicial doctrine of merger. *Id.,* 6 Ohio St.3d at 417, 6 OBR at 463, 453 N.E.2d at 593. The *Mitchell* court emphasized the following distinctions between the crimes, at 419, 6 OBR at 465, 453 N.E.2d at 595:

"The most telling distinction, however, is the one expressed by the General Assembly in its definition of these two offenses. R.C. 2913.02 is *geared toward prohibiting the nonconsensual taking of property by whatever means.* Conversely, as is indicated by the Committee Comment to R.C. 2911.11, the *main factor delineating the various species of breaking and entering is the relative risk of harm to persons.* Aggravated burglary is classified as the most serious of these offenses precisely because it carries the greatest potential threat that an individual might be harmed. Unlike the offense of theft, it involves inflicting or attempting or threatening to inflict harm on another, the use of a deadly weapon or dangerous ordnance, or the intrusion into a permanent or temporary habitation of a person at a time in which any person is present or likely to be present.

"In light of these facts, it is quite clear that the General Assembly intended to distinguish aggravated burglary and theft and make them separately punishable. Accordingly, we find that the elements of aggravated burglary, R.C. 2911.11(A), and theft, R.C. 2913.02(A), do not correspond to such a degree as to constitute allied offenses of similar import under R.C. 2941.25(A)." (Emphasis added.)

Analogously, it is equally clear that pursuant to R.C. 2941.25(A), the General Assembly intended to distinguish burglary and receiving stolen property and make them separately punishable, *i.e.,* that the offenses not be judicially merged. Therefore, we are persuaded that the allied offenses statute did not preclude appellant's burglary conviction where he had previously pled guilty to a receiving stolen property charge regarding the same property.

Appellant additionally contends that his dismissal motion should have been granted on double jeopardy principles. The Double Jeopardy Clause of the

Fifth Amendment to the United States Constitution is applicable to the states through the Fourteenth Amendment and provides that no person shall be subject for the same offense to be twice put in jeopardy of life or limb. *State v. Melvan* (1992), 80 Ohio App.3d 443, 448, 609 N.E.2d 595, 598; see, also, Section 10, Article I, Ohio Constitution. The Double Jeopardy Clause embodies three basic protections: (1) it protects against a *second prosecution* for the same offense after acquittal; (2) it protects against a *second prosecution* for the same offense after conviction; and (3) it protects against *multiple punishments* for the same offense. *Grady v. Corbin* (1990), 495 U.S. 508, 516, 110 S.Ct. 2084, 2090, 109 L.Ed.2d 548, 560, citing *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664. Initially, in applying the traditional double jeopardy test set forth in *Blockburger v. United States* (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309, the violation of two statutory provisions will not constitute the commission of a single offense and proscribe *multiple punishments* (No. 3 above) where "each provision requires proof of a fact which the other does not." As noted previously, in comparing the elements of burglary and receiving stolen property, each provision requires proof of a fact which the other does not (*i.e.,* burglary requires proof of trespass and receiving stolen property does not, and receiving stolen property requires proof of receiving, retaining, or disposing of property and burglary does not).

■ Nevertheless, the *Blockburger* test is not the exclusive means by which the protection against double jeopardy is deemed to apply to particular offenses. *State v. Tolbert* (1991), 60 Ohio St.3d 89, 90–91, 573 N.E.2d 617, 620. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, *successive prosecutions* (Nos. 1 and 2 above) will be barred in some circumstances where the second prosecution requires relitigation of factual issues already resolved by the first. *Grady, supra,* 495 U.S. at 519, 110 S.Ct. at 2092, 109 L.Ed.2d at 563.

■ In order to apply the *Grady* double jeopardy test, we must determine whether the state in order "to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted * * *. The critical inquiry is what *conduct* the state will prove, not the evidence the state will use to prove that *conduct.*" (Emphasis supplied.) *Id.* at 521, 110 S.Ct. at 2093, 109 L.Ed.2d at 564. Upon review of a claim that a subsequent prosecution is barred by the collateral estoppel component of the double jeopardy prosecution, the "burden [is] on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States* (1990), 493 U.S. 342, 350–351, 110 S.Ct. 668, 673, 107 L.Ed.2d 708, 719. Having placed the burden on the appellant, it is our duty to examine the record of the

prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration. *Id.* at 350, 110 S.Ct. at 673, 107 L.Ed.2d at 718. In addition to the burden of establishing that the issue to be precluded was actually decided in the first proceeding, appellant also bears the burden of showing error on appeal by reference to matters in the record. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 219, 400 N.E.2d 384, 385.

The record here contains a transcript of the motion hearing, the Fairfield County hearing wherein appellant pled guilty to receiving stolen property, a judgment entry finding him guilty of that charge, and an entry overruling appellant's motion. The Fairfield County hearing transcript makes reference to a Hocking County burglary and the potential for double jeopardy claims. Accordingly, we must determine whether the state in the case before us sought to relitigate conduct which formed the basis of appellant's Fairfield County receiving stolen property conviction in order to establish an essential element of its Hocking County burglary case. The conduct which was established in Fairfield County consisted of being in possession of property stolen from the Miller–Green residence. In order to convict appellant of burglary under R.C. 2911.12(A)(1), the state must prove that the defendant, by force, stealth or deception, trespassed in the Miller–Green residence with the purpose to commit a theft offense or a felony. It is immaterial whether that intent had to be formed prior to, contemporaneous with, or could be formed after the breaking and entering.[3] It is apparent

---

3. The trial court held that since the burglary was effectively complete at the time of appellant's entry into the Miller–Green residence, it did not require relitigation of factual issues already resolved by his receiving stolen property conviction. The trial court apparently applied the traditional common-law view, and that adopted by several Ohio appellate courts in construing Ohio's statutes prohibiting offenses against residences (breaking and entering, burglary, and aggravated burglary), that the "purpose to commit a felony" element of burglary (and related offenses) must be formed either *before or at* the time of the initial trespass or entry. *State v. Lucas* (Apr. 16, 1991), Vinton App. No. 461, unreported, 1991 WL 62144; *State v. McCloskey* (Jan. 24, 1990), Lorain App. No. 89CA004578, unreported, 1990 WL 4923; *State v. Burruss* (Apr. 14, 1989), Lucas App. No. L–88–235, unreported, 1989 WL 35510; *State v. Flowers* (1984), 16 Ohio App.3d 313, 16 OBR 344, 475 N.E.2d 790; see, also, *State v. Lewis* (1992), 78 Ohio App.3d 518, 605 N.E.2d 451, where this court essentially followed *Lucas*, and certified resolution of this conflict to the Supreme Court of Ohio. Conversely, other Ohio appellate courts have held that the necessary felonious purpose may be fashioned *after* the initial entry as long as it arises *during* the trespass. *State v. Houseman* (1990), 70 Ohio App.3d 499, 591 N.E.2d 405; *State v. Morris* (May 4, 1988), Summit App. No. 13406, unreported, 1988 WL 49479; *State v. Jones* (1981), 2 Ohio App.3d 20, 2 OBR 21, 440 N.E.2d 580. Although the Ohio Supreme Court has not addressed this exact issue, in *State v. Powell* (1991), 59 Ohio St.3d 62, 63, 571 N.E.2d 125, 126–127, it noted:

"The majority in the court below concluded that the additional term of actual incarceration could not be applied to these defendants because they did not possess the firearm when they

that the state need not prove that appellant, while in Fairfield County, possessed items stolen from the Miller–Green home in order to prove the element of larcenous purpose. The burglary conviction did not require proof of nor was it based upon the receiving stolen property charge. The state had available and introduced a confession dated June 29, 1990 wherein appellant admits that he went to the house knowing that Vickroy intended to steal the "intendo" (sic, Nintendo) and the tapes. At trial, the state also introduced Vickroy's testimony that he and appellant went to the home after they had taken Green to Lancaster. Upon cross-examination, Vickroy testified that they jointly decided to burglarize the home while its occupants were gone. In that the state did not need to rely, nor in fact actually relied, upon appellant's possession in Fairfield County of the stolen items, it is apparent that the state was not relitigating conduct which related to the receiving stolen property conviction. Accordingly, *Grady* does not bar the subsequent burglary prosecution.

Furthermore, the offenses involved in *Urvan* and *Maumee* (theft and receiving stolen property) are not analogous to the offenses involved herein since a thief is technically always guilty of the offense of receiving stolen property. Similarly, *DeLong* (robbery and receiving stolen property) is inapposite since a robber is generally also guilty of receiving stolen property, *i.e.*, robbery is merely theft with the use or threat of force. For the foregoing reasons, in that we discern no violation of either the allied offenses statute or the constitutional prohibition

---

first entered the Slough residence. *The court resolved the issue on the theory that a burglary is complete once a defendant gains entry into the dwelling.*

"*We disagree.* An 'aggravated burglary' is defined in R.C. 2911.11, which states in pertinent part:

" '(A) No person, by force, stealth, or deception, shall *trespass* in an occupied structure * * * with purpose to commit therein any theft offense * * * or any felony, when any of the following apply:

" ' * * *

" '(3) The occupied structure involved is the permanent or temporary habitation of any person * * *.' (Emphasis added.)

"A 'criminal trespass' is defined by R.C. 2911.21, which states in pertinent part:

" '(A) No person, without privilege to do so, shall * * *:

" '(1) Knowingly *enter or remain* on the land or premises of another; * * *' (Emphasis added.)

"The express language of the applicable statutes is dispositive. The crime of aggravated burglary continues so long as the defendant remains in the structure being burglarized because the trespass of the defendant has not been completed. Thus, when appellees acquired the firearms by theft, they were still engaged in the commission of the aggravated burglary."

However, we find it unnecessary to resolve the issue of which line of authority is correct or whether *Powell* can be construed so as to render the trial court's statement that the burglary was complete at the time of appellant's entry into the Miller–Green residence erroneous. Under either theory, the burglary was complete in the sense of being capable of prosecution at the time appellant's larcenous purpose arose, whether it was before the entry, at the time of the entry, or following the entry and during the trespass.

against double jeopardy, the trial court properly overruled appellant's dismissal motion. Appellant's second assignment of error is overruled.[4]

Appellant's third assignment of error asserts that the trial court erred in finding him guilty of aggravated burglary where the evidence failed to establish the element of trespass. Initially, we note that appellant was only found guilty of burglary and not, as appellant contends, aggravated burglary. Appellant apparently argues that the evidence of burglary was constitutionally insufficient. During the bench trial, appellant moved for acquittal pursuant to Crim.R. 29(A) at the close of all the evidence on the basis that appellee had failed to establish the element of trespass.

When a defendant challenges the legal sufficiency of the state's evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The weight and credibility of the evidence are left to the trier of fact. *Waddy, supra,* 63 Ohio St.3d at 430, 588 N.E.2d at 825.

R.C. 2911.12 provides:

"(A) No person, by force, stealth, or deception, shall do any of the following:

"(1) *Trespass* in an occupied structure or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense or any felony[.]  * * * " (Emphasis added.)

R.C. 2911.21 defines criminal trespass by providing in part that "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another * * *."

---

4. To the extent that appellant contends that all crimes arising out of one transaction must be prosecuted in one proceeding, he is incorrect. See *Grady, supra,* 495 U.S. at 523-524, 110 S.Ct. at 2094, 109 L.Ed.2d at 566, fn. 15, where the Supreme Court of the United States stated:

"Adoption of the 'same transaction' test would bar the homicide and assault prosecutions even if the State were able to establish the essential elements of those crimes without proving the conduct for which Corbin previously was convicted. The Court, however, has 'steadfastly refused to adopt the "single transaction" view of the Double Jeopardy Clause.' *Garrett v. United States,* 471 U.S. 773, 790, 85 L.Ed.2d 764 [779], 105 S.Ct. 2407 [2417] (1985). But see *Jones v. Thomas,* 491 U.S. 376, 388–389, 105 L.Ed.2d 322 [336], 109 S.Ct. 2522 [2529] (1989) (Brennan, J., joined by Marshall, J., dissenting) (maintaining that 'the Double Jeopardy Clause requires, except in very limited circumstances, that all charges against a defendant growing out of a single criminal transaction be tried in one proceeding.')."

Appellant claims that the testimony at trial was uncontroverted that Ronald Green, one of the residents of the home that was burglarized, had given appellant permission to enter the home and therefore he could not have trespassed on the property. A person who has a privilege to enter property is not guilty of criminal trespass. *State v. Barksdale* (1983), 2 Ohio St.3d 126, 2 OBR 675, 443 N.E.2d 501. "Privilege," as that term is utilized in Ohio's criminal statutes, "means an immunity, license, or right conferred by law, or bestowed by express or implied grant, or arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(L). "Privilege" for purposes of criminal trespass includes permission to enter the premises given by a resident of the premises. *Mariemont v. Wells* (1986), 33 Ohio Misc.2d 9, 514 N.E.2d 764. The concept of privilege has been broadly construed, and the state has been required to prove lack of privilege. *State v. Shelton* (1989), 63 Ohio App.3d 137, 140, 578 N.E.2d 473, 475.

In the case at bar, the evidence was uncontroverted that appellant did not have permission to enter the Miller–Green residence *for the purpose* of stealing their personal property. However, as noted in *Barksdale, supra,* 2 Ohio St.3d at 128–129, 2 OBR at 677, 443 N.E.2d at 503, there is no trespass where there is a lawful, *i.e.,* privileged, entry even though the purpose in entering is unlawful. Nevertheless, Gerali Miller testified that neither appellant nor Doak Vickroy had general permission to enter the residence. Vickroy testified at trial as follows:

"A. Then *we* went back to Logan and *we* went in their house and took a bunch of stereos and other things.

"Q. And went back to whose house?

"A. Gerali's and Ron's.

"Q. Did *you* have permission to enter?

"A. No." (Emphasis added.)

From the foregoing evidence, it could have been reasonably inferred by the trier of fact that Gerali Miller was testifying that appellant did not have general permission from either her or Green to enter the house. Additionally, it could reasonably be inferred that Vickroy was stating that *neither* he nor appellant had permission to enter. Moreover, appellant testified that he had stayed at the residence on two or three occasions and had entered the house and waited for Green to come back from work on one or two occasions. The trial court could have concluded that appellant's privilege to enter the premises was not unqualified, but was restricted to times when Green was present or expected back shortly. Neither of these limitations applied here, since appellant and Vickroy had just dropped Green off at his mother's home in Lancaster.

Furthermore, the trial court seemed to note at trial in overruling appellant's Crim.R. 29(A) motion that even if appellant possessed a general permission to enter, Vickroy did not, and therefore, appellant would alternatively be guilty of complicity to burglary. See R.C. 2923.03; *State v. Coleman* (1988), 37 Ohio St.3d 286, 289, 525 N.E.2d 792, 796; *State v. Dotson* (1987), 35 Ohio App.3d 135, 520 N.E.2d 240. In any event, in that after viewing the evidence in a light most favorable to appellee, we are persuaded that any rational trier of fact could have found the essential elements of burglary, including trespass, beyond a reasonable doubt, there being sufficient evidence to support the trial court's conviction. *Jenks, supra.* Accordingly, for all of the foregoing reasons, appellant's third assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STEPHENSON, P.J., concurs.

GREY, J., dissents.

GREY, Judge, dissenting.

I respectfully dissent.

Appellant contends that under *State v. Urvan* (1982), 4 Ohio App.3d 151, 4 OBR 244, 446 N.E.2d 1161, jeopardy for both crimes attached when he pleaded guilty to the Fairfield County charge. I agree.

The *Urvan* court held:

"When several offenses are committed in this state in different jurisdictions as 'part of a course of criminal conduct' the venue may be lodged for all the offenses in any one jurisdiction where 'one such offense or any element thereof occurred.'" *Id.* at 155, 4 OBR at 248, 446 N.E.2d at 1165.

The Double Jeopardy Clauses contained in the Fifth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, and Section 10, Article I of the Ohio Constitution, prevent an individual from being prosecuted twice for the same offense. *State v. Thomas* (1980), 61 Ohio St.2d 254, 15 O.O.3d 262, 400 N.E.2d 897. The Double Jeopardy Clause will bar successive prosecutions where the second prosecution requires relitigation of factual issues already resolved by the first. *Id.* For double jeopardy purposes, the state will be considered a single entity acting through subordinate units, namely the counties. *Brown v. Ohio* (1977), 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187. See, also, *Craig v. Engle* (N.D.Ohio 1985), 613 F.Supp. 782.

Here, the factual issues in a trial for burglary had been resolved when the Fairfield County court tried Clelland for receiving stolen property. To try Clelland in Hocking County on a charge of burglary would require a relitigation

of those factual issues which were previously determined by the Fairfield County court and flies in the face of the Ohio Supreme Court's holding in *Thomas, supra.*

The Tenth District had virtually this same issue in *State v. DeLong* (1990), 70 Ohio App.3d 402, 591 N.E.2d 345. In *DeLong,* the defendant confronted a woman in a parking lot and demanded her car keys. He drove off in her car and two days later he was arrested in Warren County. He was indicted in Warren County for receiving stolen property, pleaded guilty, and was sentenced. About three months later, he was indicted in Franklin County for robbery, pleaded double jeopardy, and was convicted. On appeal, the Tenth District found, at 405-406, 591 N.E.2d at 346:

"In *Maumee v. Geiger* (1976), 45 Ohio St.2d 238, 74 O.O.2d 380, 344 N.E.2d 133, the court stated that a thief may not be guilty of the separate offense of receiving or concealing the same property which he has stolen. See *State v. Botta* (1971), 27 Ohio St.2d 196, 56 O.O.2d 119, 271 N.E.2d 776. In *Maumee,* 45 Ohio St.2d at 244, 74 O.O.2d at 384, 344 N.E.2d at 137, the court stated:

" ' * * * Although receiving is technically not an included offense of theft, it is, under R.C. 2941.25, an "allied offense of similar import." An accused may be tried for both but may be convicted and sentenced for only one. The choice is given to the prosecution to pursue one offense or the other, and it is plainly the intent of the General Assembly that the election may be of either offense.'

"In this case, appellant could originally have been tried for both the offenses of robbery and receiving stolen property, but he could only have been convicted and sentenced for one of the offenses. The choice was given to the prosecution to pursue one offense or the other; however, once Warren County acted and charged appellant only with receiving stolen property, Franklin County cannot attempt to charge appellant with robbery.

"In *State v. Urvan* (1982), 4 Ohio App.3d 151, 4 OBR 244, 446 N.E.2d 1161, the court stated that, when several offenses are committed in different jurisdictions as part of a course of criminal conduct, the venue may be lodged for all of these offenses in any one jurisdiction where one offense, or any element thereof, occurred. However, once one jurisdiction takes action first, it preempts venue and jurisdiction for the whole matter, and jeopardy must attach as a result of the activity of the first actor. Any possible question stemming from one jurisdiction's failure to include another available charge in its prosecution is resolved by R.C. 2941.25, which requires an election between convictions for allied offenses when a state chooses to pursue both.

"In this case, once Warren County charged appellant with receiving stolen property, it made the election under R.C. 2941.25 to charge appellant with only one crime, and not to charge him with robbery. Had Warren County decided to

charge appellant with both receiving stolen property and robbery, appellant could have been convicted of and sentenced for only one of the crimes.   * * * However, * * * jeopardy attached * * * since Warren County's actions preempted venue and jurisdiction for the whole matter.   Consequently, jeopardy attached with the first prosecution for receiving stolen property and appellant's first assignment of error is well taken."

I adopt the position and the reasoning set out in *State v. DeLong, supra.*

It has long been held that receiving stolen property is included in the offense, whether it be robbery, burglary, or breaking and entering, wherein the property is illegally obtained.   There is a tendency to think that reversing a conviction is coddling criminals, or that the courts have gone overboard in protecting defendants' rights, but little thought has been given to the results obtained when the courts do not draw clear lines.   When we blur the distinction between what is one crime and what is two crimes, we erode the deterrent effect of our criminal justice system and make it less effective.

The legislature has imposed penalties for specific criminal conduct, but where the imposition of penalties is arbitrary or unpredictable, those penalties have no deterrent effect.

Thus, I dissent.