[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant-appellant George A. Kilgore appeals from his conviction and sentence for Burglary, arising from an allegation that he stole a topiary pear tree from a furniture store. Kilgore argues, among other things, that his conviction for Burglary was not supported by sufficient evidence, because the State failed to prove the element of trespass. We agree that the State failed to establish the element of trespass. Accordingly, the judgment of the trial court is Reversed, and Kilgore is ordered Discharged.
 I
Thomasville Gallery is a furniture display store located at 450 Springboro Pike, in Miamisburg. The testimony presented at Kilgore's trial showed that the store opened for business at 10:00 a.m. However, there was no evidence presented that the store's business hours were posted on or near the store's public entrance or anywhere else in the store.
On June 11, 1998, George Harbin, an employee of Thomasville Gallery, arrived at the store some time after 8:00 a.m. After repeatedly banging on the rear door of the store and ringing its buzzer, Harbin was finally let in around 8:30 a.m., by the store's receptionist, "Leslie." Leslie had arrived earlier with the store's manager, who had left shortly afterwards to run an errand. Leslie and the store manager had entered the store through its front entrance, which is enclosed by a glass atrium. The glass atrium has several doors: a double door in the front, and two doors on either side. Leslie and the store manager came in through the side door closest to the north side of the building, where the store's employees park. The store manager leaves that door unlocked in the mornings so that the store's employees can enter through it. The inner doors of the glass atrium are never locked.
Harbin and Leslie spoke in the back of the store for a few minutes, and then ventured out onto the store's display floor, where Harbin heard a noise that "sounded like somebody was walking in a hurriedly [sic] fashion, kind of just dipping in and out, * * * coming from the exit door." Telling Leslie to "stay put," Harbin rushed over to the emergency exit doors located on the north side of the building. On the way over, Harbin could hear the doors unlatch. However, when he got there, all he could see was the hand of a black male push the doors shut from the outside. The emergency exit doors only open from the inside. Harbin then rushed to the glass atrium. As he got there, he saw a fellow employee, Christine Hauser, walking into the store. Then, he saw a green car, maybe a Ford Concord or Escort, drive by the glass atrium. While persons on the inside of the atrium could see out, persons on the outside of the atrium could not see in. The driver of the green Ford looked in Harbin's direction three times before driving away. Harbin noticed something that looked like shrubbery sticking out of the trunk of the green car.
When Hauser drove into the parking lot, she noticed a green Ford Contour backed up to the emergency exit doors with its trunk open. Hauser noticed that the emergency exit doors were open, too. Hauser estimated that she arrived at the store at approximately 9:25 a.m. By contrast, Harbin testified that he entered the store at approximately 8:30 a.m., and had seen Hauser coming into the store just a few minutes later. Furthermore, when Harbin drove into the parking lot, by his estimation, some time after 8:00 a.m., he did not notice a green car backed up to the emergency exit doors.
Hauser parked her car and walked to the front entrance of the store. Just before she went in, she saw a black male standing behind the green car with his hands in the trunk. Hauser and the man looked at each other. Then, the man slammed the trunk door shut and drove away. As he did, Hauser was able to memorize his rear license plate number, which she immediately wrote down upon entering the store.
The police were contacted and given the license plate number of the suspect in the green Ford car. Hauser told the police that she may have seen the suspect in the store the night before. A subsequent search of the store by Thomasville's employees revealed that a topiary pear tree, valued at $259.99, was missing, as well as a statue of a fighting bull. The police tracked the license plate number to a green Ford Taurus rented by Maria Fiore from Star Rent-A-Car in Columbus. Fiore was in Texas at the time of the incident. However, before she had left, Fiore lent the car to her boyfriend, George Kilgore, and gave him permission to use it.
On August 4, 1998, Harbin and Hauser were shown, separately, a color photo-spread containing six suspects, one of whom was Kilgore. Both Harbin and Hauser identified Kilgore in less than ten seconds as the man they had seen in the green Ford.
Kilgore was indicted on one count of Burglary pursuant to R.C.2911.12(A)(3). Following a jury trial, Kilgore was convicted on the Burglary charge, and was sentenced to a three-year prison term.
Kilgore appeals from his conviction and sentence.
 II
Kilgore's First Assignment of Error states:
 THE TRIAL COURT ERRED AS A MATTER OF LAW AS THE STATE'S EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT A GUILTY FINDING FOR THE OFFENSE OF BURGLARY.
Kilgore argues that his conviction for Burglary was not supported by sufficient evidence because, among other things, the State failed to establish the element of trespass. We agree.
In determining whether the evidence presented at trial was sufficient to support a conviction, a reviewing court must decide whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
The offense of Burglary is defined in R.C. 2911.12, which states in pertinent part:
 (A) No person, by force, stealth, or deception, shall do any of the following:
* * *
 (3) Trespass in an occupied structure * * * with purpose to commit in the structure * * * any criminal offense[.]
The acts constituting a criminal trespass are set forth in R.C. 2911.21, which provides in pertinent part:
 (A) No person, without privilege to do so, shall do any of the following:
 (1) Knowingly enter or remain on the land or premises of another;
 (2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows he is in violation of any such restriction or is reckless in that regard[.]
R.C. 2911.21(A)(2) "covers the situation in which the land or premises involved are subject to rules on access or use, and the offender knows or has reasonable cause to believe he is in violation of the rules." 1973 Commentary, Legislative Service Commission. The duty to communicate restrictions on the use of land or a building is on the owner or occupier of the land or building. State v. McMechan
(1988), 48 Ohio App.3d 261, 263.
R.C. 2901.01(A)(12) defines "privilege" as meaning "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." A person has a privilege to enter a business establishment when it is "open to the public." State v. Clark (Sept. 28, 1999), Franklin App. No. 98AP-1650, unreported. Furthermore, it has been held that an unlocked door, during business hours, extended a tacit invitation to the public to enter a court reporter's office. State v.Richardson (Aug. 20, 1999), Hamilton App. No. C-980860, unreported.
Here, it was undisputed that Thomasville Furniture gallery did not open until 10:00 a.m. However, it is also undisputed that there was no evidence presented to show that the store's business hours were posted either at the store's public entrance or anywhere else in the store. Furthermore, it is undisputed that the door through which Kilgore entered, the atrium door on the north side of the building, was unlocked. All the other doors to the building could not have been entered from the outside.
The State argues that Kilgore should have been placed on notice that the store was not yet open for business by virtue of "[t]he early hour, as well as the vacant parking lot." We disagree.
There was a conflict in the testimony regarding when the incident occurred. According to Harbin's testimony, the incident occurred shortly after 8:30 a.m., while according to Hauser's testimony, the incident occurred shortly before 9:25 a.m. The police were dispatched to the store at approximately 9:30 a.m.; therefore, it appears that Hauser's estimate regarding the time the incident occurred was more accurate. However, even if we accept as true Harbin's estimate of the time, Kilgore would not have entered the store until sometime between 8:00 a.m. and 8:30 a.m. While many retail stores do not open for business until 10:00 a.m., the time of 8:00 a.m. to 8:30 a.m. is not so early that it should have placed the average person on notice that he was making an unauthorized entry into an establishment whose front entranceway was unlocked. Furthermore, given that it was early in the day, the fact that the store and parking lot were "virtually empty" would not have provided the average person with reasonable cause to believe that he or she was trespassing.
The State argues that Kilgore's actions once inside the store indicate that he knew he was trespassing, because he "managed to conceal his presence in the store[,] * * * [and] [w]hen he heard an employee approaching his whereabouts he hurriedly left the store, through an emergency exit." However, the fact that Kilgore's presence in the store went undetected for a period of time, and the fact that he left the store hurriedly after having committed a theft offense therein, do not demonstrate an unauthorized entry into the store. A thief is not necessarily a burglar. See State v. Barksdale (1983), 2 Ohio St.3d 126, 128, quoting Jackson v. State (Fla.App. 1972), 259 So.2d 739, 745, McNulty, J., concurring ("[a] shoplifter, for example, is a thief, not a burglar.").
The State also cites Harbin's testimony that "he often noticed other customers arrive to [sic] the store early, but they either waited in their cars or came back at a later time," and asserts that "[t]his testimony reveals that despite the fact that one of the front doors is left open for employees to enter, there is ample indication that the store in [sic] not yet open to the public." Again, we disagree.
Harbin's testimony revealed that, on occasion, customers would show up early, sit in their cars, and wait for the store to open. However, Harbin's testimony did not indicate how those persons knew that the store was not yet open for business. For instance, they may have been aware of the store's hours and arrived early inadvertently, or they may have discovered that the store was not yet open after they had made inquiry from a store employee. Nevertheless, as previously stated, there was no evidence presented demonstrating that the store's business hours were posted on or near the public entranceway to the store, or anywhere else in the store for that matter. Therefore, Harbin's testimony does not show that the average person would have had reasonable cause to believe that he was trespassing by entering the store's unlocked front door between 8:00 a.m. and 8:30 a.m.
The State's evidence did indicate that Kilgore backed his car up to the emergency side doors, with his trunk open. Notwithstanding Kilgore's assertion to the contrary, this constituted sufficient evidence to show that Kilgore entered the store with the intent to commit a theft offense. However, "there is no trespass where there is a lawful, i.e., privileged, entry even though the purpose in entering is unlawful." State v.Clelland (1992), 83 Ohio App.3d 474, 490, citing Barksdale,supra, at 128-129.[1] "The concept of privilege has been broadly construed, and the state has been required to prove lack of privilege." Clelland, supra, citing State v. Shelton (1989),63 Ohio App.3d 137, 140.
Here, the evidence, when looked at most favorably from the State's perspective, shows that Kilgore entered the store at some time between 8:00 a.m. and 8:30 a.m. The front, public entranceway to the store, through which Kilgore had to enter, was unlocked at that time. There was no evidence that the store's business hours were posted on or near the store's public entranceway or anywhere else in the store. Under these circumstances, any person entering the store through the public entranceway had tacit permission to do so.
Although the State's evidence was ample to support a conviction for Theft, Kilgore was not charged with that offense. Theft is not a lesser-included offense of Burglary, because Burglary is a completed offense once a trespass is committed with the intent of committing any criminal offense — the actual commission of the offense is not required. Because it is possible to commit the offense of Burglary without actually committing the offense of Theft, the latter is not a lesser-included offense of the former. See, State v. Harris (1979), 65 Ohio App.2d 182.
In light of the foregoing, Kilgore's First Assignment of Error is sustained.
 III
Kilgore's Second and Third Assignments of Error state, respectively, as follows:
 THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS THE PHOTO IDENTIFICATION LINEUP.
 THE JURY'S VERDICT OF GUILTY WAS COMPLETELY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL THEREBY RENDERING THE JURY'S VERDICT ERRONEOUS.
Kilgore's remaining assignments of error are rendered moot given our disposition of his First Assignment of Error; therefore, we need not decide them. See App.R. 12(A)(1)(c).
 IV
Kilgore's First Assignment of Error having been sustained, the judgment of the trial court is Reversed, and Kilgore is ordered Discharged.
WOLFF and YOUNG, JJ., concur.
[1] In Barksdale, supra, the defendant entered a car lot that was open to the public, with the intention of committing a felony. The defendant was convicted on a charge of breaking and entering, a lesser offense of burglary. This court reversed defendant's conviction on the ground that the State had failed to prove the element of trespass because the defendant was privileged to enter the lot. The State appealed, arguing that the defendant had forfeited his right of entry and had become a trespasser when the defendant entered the lot with the intention of committing a felony thereon. The Ohio Supreme Court rejected the State's argument, holding that the defendant had not relinquished his privilege to enter the lot merely because he had entered the premises with the purpose not of shopping for automobiles, but of committing a felony. Id. at 128. The court based its decision on the ground that if it were to adopt the rule advocated by the State, it would impose criminal liability "for acts for which the General Assembly clearly intended no punishment." Id. In support of its holding, the Barksdale court cited a North Carolina case, State v. Boone (1979), 297 N.C. 652, 256 S.E.2d 683, which noted that if a party who was otherwise privileged to be on another's property became a trespasser simply because he harbored felonious motives, then a witness entering a courthouse with the intention of committing perjury, and a man entering his own residence or office with the intention of filing a fraudulent tax return would be guilty of violating North Carolina's felonious entry statute, which is equivalent to Ohio's breaking and entry statute.
Barksdale was subsequently distinguished in State v. Lyons
(1985), 18 Ohio St.3d 204. In that case, the defendants drove their Pontiac into a so-called "honor parking lot," where customers are expected to deposit the proper fee into a slot box in exchange for the privilege of parking on the lot. Without either of them having tendered payment, one of the defendants got out of the Pontiac, and tried to force open the door of another car parked on the lot. The defendants were apprehended shortly thereafter, and charged with breaking and entering. The defendants were convicted on the charge, but an appeals court reversed their convictions on the authority of Barksdale. The Ohio Supreme Court reversed the appeals court and reinstated the convictions. The court distinguished Barksdale on the ground that in that case, the defendant had permission to enter the lot without having to pay a fee, whereas in the case before it, consent to enter had been made conditional upon the payment of a fee. The court reasoned that "[w]here no payment is intended, no privilege to enter can exist[,] [and] [w]here no privilege exists, entry constitutes trespass." Lyons, supra, at 206.
Barksdale was also distinguished in State v. Steffen (1987),31 Ohio St.3d 111. In Steffen, the defendant, a door-to-door salesman, entered the home of a young woman, allegedly with her permission. Once inside, he raped and murdered her. The defendant was charged and convicted of aggravated burglary and aggravated murder. Citing Barksdale, the defendant argued that his conviction for aggravated burglary was not supported by sufficient evidence because the State had failed to prove the element of trespass. The Ohio Supreme Court rejected his argument, finding Barksdale "readily distinguishable." Steffen,supra, at 115. First, noting that the alleged trespass in the case before it took place in a private home rather than a used car lot open to the general public, the court found that "[t]he interest of a private person in the inviolability of his home is materially greater than that of a business owner in his business premises, particularly where the business premises are open to the public." Id. Second, the court noted that "a privilege once granted may be revoked[,]" and that "unlike in Barksdale, the felony committed, once on the premises, was one of violence, directed against a human being who had the ability and the authority to revoke the privilege of initial entry, if such privilege was in fact granted * * *." Id. The court found that the jury was entitled to infer from the evidence presented that, even if the defendant had initially been given permission to enter, his privilege to remain on the premises had been revoked once he commenced his assault on the victim. Id.
Here, the incident took place at a commercial establishment, not a private residence, and no one had to pay a fee to enter the Thomasville store. Therefore, neither Lyons nor Steffen apply to this case, and Barksdale is controlling.