OPINION
Jon Frank is appealing from his conviction of the charge of one count of corruption of a minor and two counts of illegal use of a minor in nudity oriented material, after the entry of a no contest plea. He was sentenced to serve a term of two years incarceration. Mr. Frank entered his plea after his motion to suppress evidence was overruled. The motion was directed to both statements made by Frank and evidence obtained from him (a videotape) after his alleged illegal custodial detention by sheriff's deputies. The facts of the matter and the analysis and conclusion reached by the trial court are succinctly set forth in the following decision and entry of the court, the Hon. Michael T. Hall:
 This matter is before the Court on the Defendant's Motion to Suppress filed November 14, 2000. The Motion requests the suppression of any statements or evidence obtained from the Defendant. An Evidentiary Hearing was conducted on the Motion on December 13, 2000.
 FACTS Det. Thomas Wolf of the Montgomery County Sheriff's Office was assigned an investigation beginning on August 17, 2000. Wolf had been a Sheriff's Deputy for nine (9) years. On August 17, 2000, he received a report of a rape with the complainant being one [S.B.]. Part of the complaint indicated that a video tape had been taken of this sexual assault. This event was alleged to have occurred on the night of the 16th and the morning 17th of August, 2000. Upon further investigation, Wolf learned that the suspects in the offense were one Manual Butch Brown and a subject by the name of John, who lived in a trailer park. Brown was located and it was determined that the other subject involved in the offense was Jon Frank, the finance [sic] of Brown's mother, Jane N. Brown.
 Det. Wolf and Det. Peed approached Jon Frank's trailer with the intention to take Jon Frank downtown for questioning, if he was cooperative, and if not, he would be taken into custody. Wolf testified that upon knocking on the door, and the Defendant identifying himself as Jon Frank, "he invited us inside his trailer." The Detectives were in plain clothes, without weapons being displayed. Frank was asked if he would give the Detectives the videotape, and informed that if he would not, that they would return with a search warrant for the videotape. The Detectives explained that they were investigating a sexual assault against [S.B.] and that they were looking for a video that may prove or disprove whether a rape had occurred. Frank became "agitated," "combative," and "explosive." At that point, the Detectives handcuffed Frank. Then he let out a sigh and said, "Okay, I'll give you the tape." Detective Peed then told the Defendant, "You are still under arrest, you are still going [sic] jail." Thereafter, a Consent to Search form was read by Peed to the Defendant. The Defendant was informed he could refuse to sign the form. The Defendant never asked for an attorney and did not indicate confusion over the consent form. The Defendant was asked, "Do you understand what you're doing" and he said, "Yes." A copy of the Consent to Search form executed by Jon Frank was introduced into evidence as State's Exhibit 1.
 After signing the Consent Form, the defendant led the Detectives to what was described as a "computer" room where he retrieved a videotape from a box in the closet. Frank also assisted the Detectives in hooking up a video camera to view the video. During the encounter in the trailer, the Detectives indicated that the Defendant was never free to leave. He was not issued Miranda Warnings until after he was taken downtown to be interviewed.
 The Court notes that the testimony of Jon Frank and his fiancee, Jane N. Brown, was significantly different than that of the two (2) Detectives. Jane Brown testified that while the Detectives were at her house, which was prior to discovering the location of the Defendant's trailer, the Detectives told her that Jon was involved in a rape of a girl. Furthermore, she attempted to telephone Mr. Frank from an upstairs phone when one of the Detectives picked up the phone and hung it up. However, she did not offer any testimony of what occurred at the trailer door. She was not present.
 Jon Frank testified that once the Detectives were at his door, and after he identified himself as Jon Frank, they opened the door further and he had to back away. He said he did not grant them permission to enter his home. He testified the Detectives told him they were there because an alleged rape. He claims he was shoved into a refrigerator and felt intimidated. He also claims that after being continually harassed and pushed, he was then placed under arrest. Furthermore, he claims that after seeing the Rights form, which he did not understand, he asked to be permitted to call a lawyer. He said permission was denied by the Detectives. Frank admitted that no weapons were drawn and Detectives were in civilian clothes, and he never told them not to come into his house. Furthermore, he acknowledged that when the Detectives were talking to him about "rape" charges, he believed that the videotape would show that he engaged in consensual sex with the victim and that it was not a "rape." He also testified he thought that if he gave up the videotape, he would not go to jail.
 The Court believes the Detectives were not aggressive or physically offensive in the manner stated by Frank, and further believes that he decided to turn over the videotape because he thought it was in his best interest. This is evident from the assistance he provided the Detectives in obtaining the videotape and in demonstrating a portion of it. It is also apparent that the term "rape" was part of the discussion of the Detectives with both the Defendant and his fiancee. The Court finds that the Defendant's testimony that he was shoved, harassed and intimidated, or that he asked to call a lawyer, is not credible. [Emphasis added].
 ANALYSIS
 A warrantless entry into a home to make an arrest is unreasonable under the Fourth Amendment unless it is accompanied by either exigent circumstances or consent. Payton v. New York (1980), 445 U.S. 573 and Steagald v. United States (1981), 451 U.S. 204. In this case the Court finds that both exceptions existed. The Court finds that the facts are that Jon Frank granted the Detectives consent to enter his home to discuss the allegations that had been made by the victim. Additionally, with the information that the Detectives had received, the Court is of the opinion they had probable cause to effect the arrest of Jon Frank when he identified himself and appeared at the door. The Defendant's fiancee had already demonstrated an effort to "warn" Frank of the investigation and the prospect of the disappearance of evidence (i.e. the videotape) supported the warrantless arrest of the Defendant. Accordingly, the portion of the Motion to Suppress evidence based upon the entry into the home and arrest of the Defendant, is Overruled.
 The Defendant asserts that the retrieval of the videotape was accomplished without a search warrant and therefore, it should be suppressed. The Court believes the issue is whether the Defendant consented to the "search" and seizure of the videotape. The Second District Court of Appeals has analyzed consent to search as follows:
 "It is settled law that where the validity of a search rests on consent, the state has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." Foster, supra, at 41, 621 N.E.2d 843, citing Florida v. Royer (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229, Schneckloth, supra. Recently, we have employed the six-factor test used in United States v. Shabazz
(C.A. 5, 1993), 993 F.2d 431, to assess the voluntary nature of consent. See State v. Sanchez
(Apr. 24, 1998), Greene App. No. 97-CA-32, unreported; Forrester, supra. The six factors are as follows:
 (1) The voluntariness of the defendant's custodial status;
(2) The presence of coercive police procedures;
 (3) The extent and level of the defendant's cooperation with the police;
 (4) The defendant's awareness of his right to refuse to consent;
 (5) The defendant's education and intelligence; and
 (6) The defendant's belief that no incriminating evidence will be found.
 Shabazz, supra at 438, quoting from United States v. Olivier-Becerril (C.A. 5, 1988), 861 F.2d 424, 426. It is important to note that no single factor is dispositive. Id.
 2000 WL 84658, State v. Webb, (Ohio App. 2 Dist. Jan. 28, 2000) Mont. Co. Ct. App. #17676, unreported.
 In analyzing these factors, the Court is of the opinion that the Defendant, [sic] willingly executed a Consent to Search form, and he actively participated in assisting the Detectives to view the videotape he produced. The Court finds he was aware of his right to refuse and he voluntarily waived his Fourth Amendment constitutional right and consented to the search and seizure of the videotape. The Court is further of the opinion that the Defendant believed that it was in his best interest to produce the videotape because he thought it would provide exculpatory, rather than incriminating, evidence. Accordingly, the consent, [sic] has been proven to be valid, and the Motion to Suppress the videotape is Overruled.
 The Court also notes that to the extent that Jon Frank's statement, "Okay, I'll give you the tape" is argued to be a violation of Miranda v. Arizona, the Court is of the opinion Miranda does not apply. "Volunteered" statements are not excluded because of lack of Miranda warnings. The Court finds that upon being placed in handcuffs, the Defendant sighed and made the quoted statement, and that statement is a "volunteered" statement not the result of custodial interrogation.
 CONCLUSION
For the reasons detailed herein, the Motion to Suppress of the Defendant is OVERRULED.
The Defendant, represented by counsel, brings on appeal the following sole assignment of error:
 THE TRIAL COURT ERRED IN FAILING TO SUPPRESS STATEMENTS MADE BY APPELLANT TO THE POLICE IN VIOLATION OF THE DEFENDANT'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS.
Under this assignment of error, the defendant argues both that he was not properly advised of his Miranda warnings or his right to counsel, and that his consent was involuntarily obtained as a result of the police interrogation tactics. Apparently, counsel is arguing that Frank's statement that he would give the deputies the tape is an incriminating statement before Miranda was given. We do not find it incriminating. In fact, as the trial court noted, the tape is actually exculpatory of a rape charge against Mr. Frank and we find, as did the trial court, that it was voluntarily surrendered. Frank not only gave the police the videotape, he voluntarily led them to it after executing a consent to search form. Miranda warnings are not necessary for a consent to search to be voluntary, as we have so held. State v. Lee (Oct. 31, 1997), Greene App. No. 96CA115, unreported, at 6.
This case is clearly about credibility, as the officers' versions and the defendant's version of their encounter in the defendant's trailer are markedly conflicting. As we have stated so many times, credibility is for the trier of the facts. See, e.g., State v. Hendricks (Mar. 15, 2002), Montgomery App. No. 18947, and cases cited therein. As the Ohio Supreme Court has stated: "[w]here the decision in a case turned upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." Myers v. Garson (1993), 66 Ohio St.3d 610, 614. Even if it could be deemed that Frank was under arrest when the officers felt for their own safety they had to handcuff him, it would not vitiate his granting consent to search if, under the totality of the circumstances, we find the consent to be still voluntary in that the arresting officers did not use coercive tactics or took unlawful advantage of the defendant. Statev. Tobias (Sept. 15, 2000), Montgomery App. No. 17975, unreported; Statev. Clelland (1992), 83 Ohio App.3d 474, 481. Furthermore, we have held that a trial court's determination of whether a consent to search is voluntary will not be disturbed on appeal unless it is truly erroneous.State v. Webb (Jan. 28, 2000), Montgomery App. No. 17676, unreported.
The decision of the trial court set forth above, is hereby approved and adopted as our own. The sole assignment of error is overruled, and the judgment is affirmed.
FAIN, J. and GRADY, J., concur.