### State v. Johnston
*[Cite as 3 AOA 306]*

*Case No. 89AP-849
Franklin County, (10th)
Decided May 10, 1990*

Mr. Charles A. Gerken, Hocking County Prosecuting Attorney, for Appellant.

Thomas M. Tyack & Associates, Co., L.P.A., and Mr. Thomas M. Tyack; Robert W. Suhr & Associates and Mr. Robert W. Suhr, for Appellee.

STRAUSBAUGH, J.

Plaintiff, State of Ohio, appeals an order of the trial court granting defendant Dale N. Johnston's motion to suppress certain statements and evidence obtained from defendant as the result of an interrogation conducted by police officials.

Defendant was indicted on September 29, 1983 on two counts of aggravated murder.[1] The only matter presently before this court on appeal concerns the trial court's ruling on defendant's motion to suppress filed on June 6, 1989.

The circumstances giving rise to defendant's motion to suppress concern an interrogation of defendant conducted on October 21, 1982 at the Logan police station, Logan, Ohio. On the date in question, defendant was questioned for approximately eight and one-half hours by the Logan police.

The trial judge, during the motion for suppression hearing, heard testimony from witnesses which included defendant, detective James Thompson of the Logan Police Department, and Herman Henry, an agent from the Ohio Bureau of Criminal Investigation ("BCI"). Based upon the testimony concerning the facts of the interrogation session, discussed in detail under the first assignment of error, the trial judge sustained defendant's motion to suppress any and all statements of defendant made during the interrogation of October 21, 1982. The trial judge further ordered suppression of any items seized from defendant on the same date. The trial judge ruled that the circumstances surrounding the police conduct during the interrogation of defendant were "custodial, unacceptable and violative" of defendant's constitutional rights.

From the trial court's suppression order, the state now appeals under Crim. R. 12(J), setting forth the following three assignments of error for review by this court:

"1. The Court erred in suppressing defendant's voluntary statements made after being appropriately advised of his Miranda rights.

"2. The Court erred in suppressing items obtained during a consentual [sic] search of defendant's premises on the night of October 21-22, 1982, and the person of the defendant on October 21, 1982.

"3. The Trial Court erred in failing to overrule Defendant's motion to suppress for being out of rule."

Under the first assignment of error, the state asserts that the court erred in suppressing defendant's voluntary statements made after being appropriately advised of his *Miranda* rights.

In its brief to this court, the state places much emphasis on the contention that during the questioning of defendant the police complied with the requirements of *Miranda* v. *Arizona* (1966), 384 U.S. 436. A review of the record indicates that defendant was advised of his *Miranda* rights and that he signed a *Miranda* form.

The mere showing, however, of formal compliance with *Miranda* does not end our inquiry concerning the statements given by defendant. We point out that a clear distinction exists between the question of compliance with the requirements of *Miranda* and the issue as to the constitutional voluntariness of a confession.

This distinction was noted by the Supreme Court of Ohio in *State* v. *Kassow* (1971), 28 Ohio St. 2d 141, in which the court stated:

"The rule of *Miranda* \*\*\* which requires proof of the voluntary waiver of the Fifth Amendment *right not to respond* to police questioning, exists independently of, and in addition to, the historic rule of evidence that an accused's statement may not be used against him in any way if the *statement itself* is proved to be involuntary, *i.e.,* untrustworthy when tested by traditional legal standards \*\*\*." (Citations omitted.) *Id.,* paragraph one of the syllabus.

See, also, *State* v. *Chase* (1978), 55 Ohio St. 2d 237, 246 ("\*\*\* the question of whether the accused's statements were in fact voluntary is separate from the question of compliance with *Miranda*.").[2]

The focus of our inquiry must deal with whether the statements of defendant were offered voluntarily, free of any duress or coercion. Before any confession may be admitted into evidence in a criminal case, it must be shown that the confession was voluntarily given. *Spears* v. *State* (1853), 2 Ohio St. 583, 585. "The use in a state criminal trial of a defendant's confession obtained by coercion - whether physical or mental - is forbidden by the Fourteenth Amendment. \*\*\*" *Payne* v. *Arkansas* (1958), 356 U.S. 560, 561. In order for a confession to be admissible, the prosecution must prove by a preponderance of the evidence that the statements were voluntary. *Lego* v. *Twomey* (1972), 404 U.S. 477, 489. See, also, *State* v. *Arrington* (1984), 14 Ohio App. 3d 111; *State* v. *Melchior* (1978), 56 Ohio St. 2d 15, 25; *State* v. *Garcia* (1986), 32 Ohio App. 3d 38.

In the present action, at the hearing before the trial court, defendant testified that he had gone to the Logan police station on October 21, 1982 to meet with BCI agent Henry for the purpose of making an identification. Defendant stated that following his meeting with agent Henry, defendant was approached by detective Thompson who indicated that he wished to question defendant. The interrogation, conducted by detective Thompson, took place in an upstairs conference room at the station. The interrogation lasted approximately eight and one-half hours, beginning at 3:30 p.m. and terminating at about twelve midnight.

Defendant was advised of his *Miranda* rights and signed a waiver form. Defendant did not have an attorney with him during any portion of the questioning nor were any members of his family present. Defendant testified that once he was inside the conference room he was under the assumption that he had been placed under arrest. Defendant further indicated that he was never informed by detective Thompson that he was free to leave of his own will. Defendant noted the presence of an armed guard at the door of the conference room who remained there throughout the questioning. Defendant stated that the guard accompanied him whenever he requested to use the restroom facility during the session.

During the course of the interrogation, defendant was asked to remove certain personal items including his boots and vest. Defendant complied with these requests. Defendant testified that he was under the impression that it was mandatory for him to give up these items.

At some point during the session, defendant was asked to sign a "Permission to Search" form. Defendant testified that he signed the form "quite a bit of time after" his personal items had been removed. Defendant stated that it was his feeling that if he did not sign the form he would be retained at the police station. Following the interrogation at the police station, defendant was placed in the back of a police cruiser, sans his boots, and transported to his home. Upon arrival, a search was conducted and certain items were removed from defendant's residence.

The foregoing testimony indicates that defendant was subjected to custodial interrogation by the Logan police. However, "[t]he bare fact of police ` detention and police examination in private of one in official state custody' does not render involuntary a confession by the one so detained." *Crooker* v. *California* (1958), 357 U.S. 433, 437, overruled on other grounds *Miranda* v. *Arizona* (1966), 384 U.S. 436, 479, fn. 48 (quoting *Brown* v. *Allen* (1953), 344 U.S. 433, 476). The test for voluntariness, as enunciated by the Supreme Court of Ohio in *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, vacated in part on other grounds (1978), 438 U.S. 911, looks to the totality of the circumstances surrounding the defendant's confession. In *Edwards, supra,* paragraph two of the syllabus provides:

"In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."

The testimony of BCI agent Henry at the suppression hearing is relevant to an examina-

tion of the factors in *Edwards*. Agent Henry testified that he was present at the police station when the questioning of defendant by detective Thompson was initiated. Agent Henry testified that the tone of the questioning by detective Thompson was rough, strong, that "he [Thompson] came on real strong." Agent Henry indicated that he felt that detective Thompson was attempting to intimidate defendant.

The trial transcript reveals the following testimony of agent Henry concerning the interrogation of defendant at the police station:

"Q. [Defense counsel] *** [Y]ou ultimately left -- am I correct in that, sir?

"A. [Henry] Yes, sir.

"Q. Was the interrogation still going on at that point in time?

"A. Yes, sir.

"Q. Why did you leave?

"A. I felt I had to.

"Q. Tell me why?

"A. The manner in which the interview was being conducted, I didn't see eye to eye with it.

"Q. When you say that you didn't see eye to eye with it, what was it about it that you didn't see eye to eye, sir?

"A. I don't conduct interviews in that manner, making allegations and so on that I cannot substantiate at the time.

"Q. What kind of allegations was detective Thompson making in these interviews, or what was the thrust of his interrogation?

"A. That Mr. Johnston committed the crimes under investigation.

"***

"Q. During the entire period of time that Mr. Johnston was in that room being interrogated by detective Thompson, did you ever hear detective Thompson make any statement to Mr. Johnston that he was free to leave at any time?

"A. No, sir.

"Q. Was it your impression that what was attempting to be done here was to basically keep him there and question him until he broke?

"A. Possibility, yes." (Tr. 38-40.)

During his testimony, agent Henry was also asked about certain accusations detective Thompson had made to defendant concerning blood spots on defendant's boots and cuts on defendant's hands:

"Q. [Defense counsel] *** During the course of the interrogation by detective Thompson, did you hear detective Thompson tell Dale Johnston that there were blood spots on his boots?

"A. Yes.

"Q. Did you look at boots?

"A. Yes.

"Q. Did you see any blood spots?

"A. No, sir.

"Q. During the course of that interrogation, did you hear detective Thompson tell Dale Johnston that he had cuts on his hands?

"A. Yes, sir.

"Q. Did you look at his hands?

"A. Yes, sir.

"Q. Did you see any cuts on his hands?

"A. No fresh cuts or heeling [*sic*] cuts, no sir." (Tr. 42.)

Based upon the evidence provided at the hearing and an evaluation of the witnesses, the trial court sustained the motion to suppress, stating in part:

"This Court views the interrogation session portrayed in evidence as custodial, unacceptable and violative of defendant's rights under the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution."

The task of the trial court, as fact finder, was to weigh the evidence and resolve the credibility of the witnesses. From the facts and circumstances contained in the record, we cannot say that the trial court erred in sustaining the motion to suppress defendant's statements at the police station; rather, we conclude that the trial court's decision regarding the issue of voluntariness was not against the preponderance of the evidence.

The conduct of the police during the eight and one-half hours session indicates a process of interrogation and an attempt to overbear defendant's free will through coercive behavior. The state presented no legitimate reason for the length of the interrogation in this instance. The methods employed in this instance are violative of the basic principle that "ours in an accusatorial and not an inquisitorial system." *Rogers v. Richmond* (1961), 365 U.S. 534, 541. The coercive nature of the questioning is supported not only by the statements of defendant but also those of BCI agent Henry, who withdrew from the interrogation room due to his disagreement with the tactics employed by the Logan police. Agent Henry's testimony, while somewhat lacking in specificity, related that the questioning by detective Thompson was intense and that the officer's actions indicated an attempt to question defendant until he "broke."

Further evidence indicated that detective Thompson attempted to deceive defendant into

thinking that the physical evidence, *e.g.*, blood on defendant's boots, was stronger than it actually was. The use of deceit, although not conclusive, is another factor in the volutariness determination. See *State* v. *Cooey* (1989, 46 Ohio St. 3d, 20, 27; *Frazier* v. *Cupp* (1969), 394 U.S. 731, 739.

The state, in its brief to this court, argues that the testimony provided by agent Henry at the hearing on the motion to suppress should be compared to the testimony given by agent Henry at the original trial. The state has attached as an exhibit certain purported pages from the original trial transcript for review by this court. The state acknowledges that this transcript was not available to the trial court at the suppression hearing.

We decline the state's invitation to review selected portions of matters outside the record. It is well-established that "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State* v. *Ishmail* (1978), 54 Ohio St. 2d 402.

Accordingly, for the foregoing reasons, the first assignment of error is overruled.

Under the second assignment or error, the state asserts that the trial court erred in suppressing items obtained during a consensual search of defendant's premises on the nights of October 21 and 22, 1982, and the person of the defendant on October 21, 1982.

Initially, we note that there is no indication from the record that a valid search warrant was executed in reference to the items seized. Generally, searches conducted without judicial warrant are "*** *per se* unreasonable under the Fourth Amendment ***--subject only to a few specifically established and well-delineated exceptions. ***" *Katz* v. *United States* (1967), 389 U.S. 347. 357. Further, "*** where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given ***." *Florida* v. *Royer* (1983), 460 U.S. 491, 497.

The thrust of the state's argument under this assignment of error is that defendant voluntarily consented to a search and seizure of the items in question. We find no merit in this contention.

We have already discussed under the previous assignment of error, the coercive nature of the interrogation session. We find it unnecessary to reiterate in full those findings here. We do note again, concerning the seizure of the items, defendant's testimony revealed apparently that he believed that he was required to turn over his personal items at the police station and that he believed that if he did not sign the "Permission to Search" form that he would be retained at the station.

Further, BCI agent Henry confirmed defendant's testimony that no consent to search form was given to defendant prior to the removal of his personal items. Again, agent Henry's testimony in general corroborated defendant's depiction of the interrogation setting.

It is clear the "[w]here there is coercion there cannot be consent." *Bumper* v. *North Carolina* (1968), 391 U.S. 543, 550. The state has failed to sustain its burden of establishing defendant's free and voluntary consent to a warrantless search and we will not disturb the trial court's ruling that the search in question was in violation of defendant's rights under the Fourth Amendment to the Constitution of the United States.

Again, the state attempts to introduce evidence outside of the record and not part of the trial court proceedings to support its position. The state has attached to its brief to this court a consent form alleged to be signed by the wife of defendant. The state argues that based upon *State* v. *McCarthy* (1971), 26 Ohio St. 2d 87, the items of evidence seized from defendant's home are admissible pursuant to spousal consent.

As previously stated, we will not consider purported evidence wholly outside of the record. See *Ishmail, supra.* We limit our review of the facts to the testimony at the hearing on the motion to suppress, that being the only record properly before us.[3]

Accordingly, plaintiff's second assignment of error is overruled.

Under the third assignment of error, the state asserts that the trial court erred in failing to overrule defendant's motion to suppress for being out of rule.

In the present case, defendant's motion to suppress was filed subsequent to the original trial. The state contends that in failing to file the motion prior to the first trial, defendant has not waived his right to object to admission of the evidence obtained on October 21 and 22, 1982.

Crim. R. 12 provides in pertinent part:

"(B) Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. The following must be raised before trial:

"***

(3) Motions to suppress evidence ***.
"***

"(G) Effect of Failure to raise Defenses or Objections. Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial *** shall constitute waiver thereof, *but the court for good cause shown may grant relief from the waiver*." (Emphasis added.)

In the present case, the trial court did not deny defendant's motion as untimely when the issue was raised by the state. Rather, the court proceeded with the evidence and ruled on the merits of the motion to suppress.

Because the trial court heard and ruled on the motion to suppress, we find that the merits of the court's ruling are properly before us. It is a matter within the discretion of the trial court to grant a motion to suppress which was not timely filed. *Akron* v. *Milewski* (1985), 21 Ohio App. 3d 140, 142. For examples of comparable federal[4] treatment, see *United States* v. *Contreras* (C.A.11, 1982), 667 F. 2d 976 ("Ordinarily, failure to move pretrial for suppression of statements acts as waiver *** but where *** court entertained and ruled on suppression motion during trial, issue was properly before Court of Appeals. ***"); *United States* v. *Seay* (C.A.5, 1970), 432 F. 2d 395, 402, certiorari denied (1970), 401 U.S. 942. (Although motion to suppress was not made before trial, because judge did proceed to entertain and rule on motion during trial, it may not be held untimely on appeal.)

Plaintiff's third assignment of error is overruled.

Accordingly, for the foregoing reasons, plaintiff's assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

YOUNG and BRYANT, JJ., concur.

[1] For a procedural history of this case prior to the July 9, 1989 motion to suppress hearing see *State* v. *Johnston* (1988), 39 Ohio St. 3d 48. Following the Supreme Court of Ohio's decision in *Johnston, supra,* the case was transferred from Hamilton County to the Franklin County Common Pleas Court on May 19, 1989.

[2] The court in *State* v. *Chase* (1978), 55 Ohio St. 2d 237, 246 further noted that "*** formal compliance with the requirements of *Miranda* does not preclude proof that the statements themselves were involuntary. ***" We note that defendant does not raise the issue as to whether a "knowing and intelligent" waiver of his *Miranda* rights occurred and that issue is not before us here. In the present case, our concern is upon the trial court's finding of a coercive police interrogation and we examine whether defendant acted in a voluntary manner in providing statements and signing a consent to search form. We base our analysis upon the traditional due process standard of voluntariness. See *Culombe* v. *Connecticut* (1961), 367 U.S. 568, 602; *Spears* v. *State* (1853), 2 Ohio St. 583.

[3] While we do not reach or determine the issue of spousal consent, we only note that even assuming the existence of such a consent form, we are not confident that the result would have been different in this case based upon *State* v. *McCarthy* (1971), 26 Ohio St. 2d 87. The language of *McCarthy,* concerning spousal consent and the concept of joint control, notes distinction between permissible spousal consent to the search of areas under common control as opposed to a search directed toward the personal effects of an absent spouse. *McCarthy, supra,* at 91. In the present case, it appears from the record that items removed from defendant's residence related to defendant's personal property.

[4] Fed. R. Crim. P. 12(f) is the counterpart to Ohio Crim. R. 12(G). The language of the federal rule is virtually identical to the Ohio rule and provides:

"(f) Effect of failure to raise defenses or objections.

"Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver."