OPINION
This is an appeal from the Portage County Court of Common Pleas. Appellant, the state of Ohio, appeals the judgment entry of the trial court suppressing the confession of appellee, Virgil L. Taylor.
On November 24, 1998, the Portage County Grand Jury returned a true bill on an indictment against appellee charging him with complicity to trafficking in marijuana, a felony of the second degree, in violation of R.C. 2923.03 and 2925.03; possession of marijuana, a felony of the second degree, in violation of R.C. 2925.11(A)(C)(3)(f); and engaging in a pattern of corrupt activity, a felony of the second degree, in violation of R.C. 2923.32(A)(1). On December 1, 1998, appellee was arraigned, and he entered a plea of not guilty to the charges. On February 16, 1999, appellee filed his first motion to suppress the evidence because he was interrogated without the benefit of Miranda warnings and there was no probable cause for his arrest, thus, his arrest was warrantless. A hearing on the motion to suppress was held on March 29, 1999. At that hearing, Agent Charles G. McCoy ("Agent McCoy") with the Drug Enforcement Administration testified as to his involvement in appellee's arrest.
On March 30, 1999, the trial court issued a judgment entry overruling appellee's motion to suppress regarding the issue that the warrantless arrest of appellee was invalid. Thereafter, on July 15, 1999, appellee filed a second motion to suppress any and all statements made by him pursuant to his arrest. A hearing on this motion was held on July 20, 1999, before the jury trial was to begin.
Appellee, who did not testify at the first suppression hearing, stated that he met Larry Wagner ("Wagner") at Bob's Big Boy restaurant in Streetsboro, Ohio on July 27, 1998. He explained that as he was exiting the restaurant, he was arrested, but did not recall anyone reading him his Miranda rights. Appellee explained that when he came out of the restaurant "this black dude [an agent] came running out of this van with a gun and there was nobody else around so he actually scared [him] * * *." Then, another agent walked up to the agent who was on top of appellee and asked him if appellee had been read his rights. The agent replied, "[n]o, but I'm going to." In fact, appellant stated that he did not remember if any Miranda rights were read to him.
Following appellee's testimony, Agent McCoy was called to the stand and related that at the time of the arrest, he read appellee his rights, and appellee said he understood those rights.[1] Agent McCoy also stated that appellee was Mirandized again at his house. Agent McCoy also claimed that appellee understood the questions and was able to answer them.
On cross-examination, Agent McCoy revealed that he read appellee his rights the first time while he was "* * * cuffed and half sitting up." Agent McCoy explained that he did not administer the Miranda warnings that were given to appellee at his residence, but no statements were taken at that time. Several hours later, appellee was taken to the Portage County Jail and booked. Agent McCoy indicated that he was told that appellee wanted to speak to him. However, Agent McCoy revealed that no Miranda warnings were given to appellee at that time since appellee had "already been Mirandized." Further, no written Miranda waivers were contained in the record.
In a judgment entry dated July 21, 1999, the trial court granted appellee's motion to suppress his confession. The trial court reasoned that appellee's confession was given voluntarily and that it was not coerced. However, appellant "failed to establish [that] there was a voluntary and knowing waiver of [appellee's Miranda] rights prior to his confession at the jail." Appellant timely filed the instant appeal from that entry, pursuant to Crim.R. 12(J), and now asserts the following assignments of error:
 "[1.] The trial court abused its discretion when it considered and subsequently granted [a]ppellee's second motion to suppress.
 "[2.] The trial court erred when it concluded that [appellee] did not voluntarily waive his [Miranda] rights when the evidence adduced at the hearing on his motion to suppress showed that [appellee] received [Miranda] warnings two separate times and that [appellee] asked to speak to and actually spoke to law enforcement officers approximately four hours after the last set of warnings [was] given."
 In its first assignment of error, appellant alleges that the trial court committed an abuse of discretion by considering and granting appellee's second motion to suppress. Specifically, appellant claims that the second motion was untimely filed because it was submitted five days before the trial, the issue raised in it was also mentioned in the first motion, and "[n]othing new * * * was presented at the hearing * * *."
In State v. Montgomery (1991), 61 Ohio St.3d 410, 413, the Supreme Court of Ohio stated that an abuse of discretion "`connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * *' State v. Adams
(1980), 62 Ohio St.2d 151, 157 * * *."
The trial court has discretion to extend the time for making pretrial motions in the interest of justice. Crim.R. 12(G). Thus, even if appellee's second motion was untimely filed, we conclude that the trial court's decision was not unreasonable, arbitrary, or unconscionable. The trial court has discretion to grant a motion to suppress that is untimely filed. State v. Sibert (1994), 98 Ohio App.3d 412, 429; State v.Johnston (1990), 64 Ohio App.3d 238, 248-249. Therefore, the trial court did not err in considering appellee's second motion to suppress. Appellant's first assignment of error lacks merit.
In its second assignment of error, appellant contends that appellee did not voluntarily waive his Miranda rights because the evidence presented at the suppression hearing showed that he received Miranda warnings two separate times and that he asked to speak to law enforcement officers approximately four hours after the last set of warnings was given.
It is well-established law that a police officer must inform a suspect in custody that he has the right to remain silent, that his statements may be used against him in a court of law, that he has the right to an attorney, and that if he cannot afford an attorney, one will be appointed prior to questioning. Miranda v. Arizona (1966), 384 U.S. 436, 444. Thereafter, the suspect may waive those rights and make incriminating statements against himself without the presence of counsel. Id. This court has stated that the state bears the burden of demonstrating that any statements were acquired in compliance with Miranda. State v.Nelson (Sept. 24, 1999), Lake App. No 97-L-108, unreported, at 4, 1999 WL 778374. Furthermore, the Supreme Court of the United States has held that:
 "An express written or oral statement of waiver of the right to remain silent * * * is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case. As was unequivocally said in Miranda, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." North Carolina v. Butler (1979), 441 U.S. 369, 373.
 In State v. Eley (1996), 77 Ohio St.3d 174, 178, the Supreme Court of Ohio reasoned that the state has the burden of proving by a preponderance of the evidence that a defendant "voluntarily, knowingly, and intelligently" waived his Miranda rights based on the "totality of the circumstances" surrounding the interrogation. In addition, the trial court assumes the role of the trier of fact when considering a motion to suppress and, therefore, is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Kobi (1997), 122 Ohio App.3d 160, 167. Such a finding will not be disturbed on appeal absent an abuse of discretion. Nelson, supra, unreported, at 4. To determine whether a defendant's confession was involuntary, "the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus.
In the instant matter, pursuant to the testimony at the suppression hearings, it is our view that appellee was read his Miranda rights at the time of his arrest. Subsequently, appellee was taken to his residence and according to Agent McCoy, he was Mirandized for a second time. However, Agent McCoy testified that he did not Mirandize appellee at his residence. There was also no testimony at either suppression hearing from the officer or agent who read appellee his rights at his residence. Appellee was transported to the Portage County Jail where he made statements and was interrogated for several hours. Yet, both appellee's and Agent McCoy's testimony revealed that at no time, while appellee was at the jail, was he read his rights. Based on the totality of the circumstances surrounding the interrogation, we conclude that appellant has not met its burden of proving by a preponderance of the evidence that appellee "voluntarily, knowingly, and intelligently" waived his Miranda
rights. Consequently, appellant's second assignment of error is without merit.
For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.
O'NEILL, P.J., CHRISTLEY, J., concurs.
[1] We note that Agent McCoy's testimony at the second suppression hearing was similar to his testimony at the first hearing.