[Cite as *Johnston v. State*, 2016-Ohio-4761.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Dale Johnston, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 12AP-1022 |
| v. | : | (C.P.C. No. 11CVH-12-15900) |
| State of Ohio, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 30, 2016

*The Owen Firm, LLC*, and *James D. Owen*, for appellee.

*Michael DeWine*, Attorney General, and *Debra Gorrell Wehrle*, for appellant.

APPEAL from the Franklin County Court of Common Pleas
ON REMAND from the Supreme Court of Ohio

SADLER, J.

{¶ 1} On October 28, 2015, the Supreme Court of Ohio in *Johnston v. State*, 144 Ohio St.3d 311, 2015-Ohio-4437 ("*Johnston II*"), reversed the decision of this court in *Johnston v. State*, 10th Dist. No. 12AP-1022, 2014-Ohio-1452 ("*Johnston I*"), and remanded the case to this court to "address the assignments of error it previously determined moot." *Johnston II* at ¶ 25. On consideration of the remaining assignments of error, we reverse the judgment of the trial court.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  In *Johnston I,* defendant-appellant, State of Ohio, appealed from a judgment of the Franklin County Court of Common Pleas declaring plaintiff-appellee, Dale Johnston, a wrongfully imprisoned individual pursuant to R.C. 2743.48(A).  The Supreme Court accepted the state's discretionary appeal on the following proposition of law: "The divided court in the Tenth District erred when it, for the first time, held in direct contravention of the express wishes of the Ohio General Assembly, that the 2003 amendments to R.C. 2743.48 (governing an 'error in procedure') do not apply retroactively."  *Johnston II* at ¶ 12.  The Supreme Court set out the relevant facts and procedural history of this case as follows:

> In September 1983, almost a year after the discovery of the bodies of Cooper and Schultz, a Hocking County grand jury indicted Johnston on two counts of aggravated murder with death penalty specifications.  At trial, a three judge panel found him guilty of all charges and specifications and sentenced him to death on each count.  The appellate court overturned Johnston's convictions and remanded the cause for a new trial.  We affirmed that ruling because the trial court had abused its discretion in permitting a witness to testify about his posthypnosis recollection and the state had committed a *Brady* violation, *Brady v. Maryland*, 373 U.S. 83, 87 * * * (1963), by failing to disclose evidence that suggested that the victims may have been murdered at a location different from that alleged by the state and that someone else may have been responsible for the murders.
>
> On remand, the Hocking County Common Pleas Court transferred the case to Hamilton County for trial, which then transferred to Franklin County.  The parties jointly filed a motion with the trial court to determine the admissibility of the testimony of the witness who had been hypnotized.  In response, the court held that the hypnotically refreshed testimony was inadmissible.  The court also granted Johnston's motion to suppress statements he had made during an interrogation, along with evidence seized from him and his residence.  That suppression ruling was appealed and affirmed by the Tenth District Court of Appeals on May 10, 1990.  The next day, the state nolled the indictment against Johnston, and thereafter, he was released from the penitentiary.

Subsequently, Johnston filed a wrongful imprisonment claim pursuant to R.C. 2743.48, but the common pleas court dismissed it in 1993, concluding that Johnston had not proved by a preponderance of the evidence that he did not commit the murders.

On April 9, 2003, the General Assembly amended R.C. 2743.48 and expanded the definition of wrongfully imprisoned individuals to include those who had been released due to a procedural error subsequent to sentencing. Sub.S.B. No. 149, 149 Ohio Laws, Part II, 3545. Developments in the investigation of the deaths of Cooper and Schultz culminated in Chester McKnight pleading guilty to their aggravated murders on December 18, 2008.

Based on McKnight's plea, Johnston filed a second claim for wrongful imprisonment, alleging that he was innocent and also claiming that errors in procedure, including the *Brady* violations, resulted in his release. Both parties filed for summary judgment. The trial court accepted Johnston's procedural error argument, rejected the state's position that the 2003 amendment to R.C. 2743.48 was not retroactive, granted Johnston's motion for summary judgment, and declared Johnston to be a wrongfully imprisoned individual.

The state appealed, and the Tenth District Court of Appeals reversed the trial court and held that the amendment did not apply retroactively to Johnston's claim and that its ruling rendered moot the state's other assignments of error asserting that a six-year statute of limitations applied to Johnston's claim, that res judicata barred Johnston from relitigating his actual innocence claim, and that Johnston had not satisfied the fourth and fifth prongs of the wrongful imprisonment statute. The appellate court later denied Johnston's application for en banc consideration and his motion to certify a conflict, and it declined to consider the state's contention that the wrongful imprisonment claim also failed based on our newly released decision in *Mansaray v. State*, 138 Ohio St.3d 277, 2014-Ohio-750.

(Citations omitted.) *Id.* at ¶ 6-11.

{¶ 3} In reversing the decision of this court in *Johnston I*, the Supreme Court concluded in *Johnston II* that "[t]he 2003 amendment to R.C. 2743.48 expanded the definition of a wrongfully imprisoned individual to include those able to demonstrate a

procedural error occurring subsequent to sentencing that resulted in the inmate's release and applies retroactively to permit litigation of claims on that basis." *Id.* at ¶ 24. Accordingly, the Supreme Court reversed the decision of this court and remanded the case for us to consider the state's remaining assignments of error.

{¶ 4} This court subsequently issued a journal entry stating, pursuant to the mandate of the Supreme Court reversing the judgment of this court, this matter is hereby resubmitted to the court for consideration of appellant's first, third, fourth, and fifth assignments of error.

{¶ 5} The parties submitted no supplemental memoranda to this court following remand, nor did they request further argument. Accordingly, we will decide the appeal based on the written briefs previously submitted by the parties and without further oral argument. The assignments of error remanded to this court for consideration read as follows:

> [1.] The trial court committed reversible error by declaring the six (6) year statute of limitations for wrongful imprisonment cases, pursuant to *Nelson v. State*, 5th Dist. No. 2006 AP 10 0061, 2007-Ohio-6274, ¶21, did not apply to Appellee.
>
> [3.] The trial court committed reversible error by declaring Appellee was not barred by the doctrine of *res judicata* from re-litigating his actual innocence claim, previously passed upon by a court of competent jurisdiction in 1993.
>
> [4.] The trial court committed reversible error by declaring Appellee satisfied the fourth prong of the wrongful imprisonment statute, R.C. § 2743.48(A)(4).
>
> [5.] The trial court committed reversible error by declaring Appellee satisfied the fifth prong of the wrongful imprisonment statute, R.C. § 2743.48(A)(5).

## II. STANDARD OF REVIEW

{¶ 6} The trial court granted Johnston's motion for summary judgment and declared him a wrongfully imprisoned individual pursuant to R.C. 2743.48. Summary judgment is proper only when the party moving for summary judgment demonstrates that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as

a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in that party's favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 7} Appellate review of a summary judgment motion is de novo. *Helfrich v. Allstate Ins. Co.*, 10th Dist. No. 12AP-559, 2013-Ohio-4335, ¶ 7, citing *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997). " 'When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.' " *Id.*, quoting *Mergenthal v. Star Banc Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997).

## III. LEGAL ANALYSIS

### A. Third Assignment of Error (Res Judicata)

{¶ 8} Because the state's third assignment of error raises the question whether the 1993 judgment in Johnston's prior wrongful imprisonment action bars him from relitigating the claim in this case, we will consider the third assignment of error first. In its third assignment of error, the state argues that the trial court erred when it found that res judicata did not bar Johnston's second action for wrongful imprisonment based on a claim of actual innocence.

{¶ 9} There is no dispute that in *State v. Johnston*, Hocking C.P. No. 91-CIV-186 (Aug. 9, 1993), Johnston sought a declaration of wrongful imprisonment based on a claim of actual innocence, and Judge McQuade entered judgment in favor of the state as to that claim. " 'The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as * * * estoppel by judgment, and issue preclusion, also known as collateral estoppel.' " *State ex rel. Nickoli v. Erie MetroParks*, 124 Ohio St.3d 449, 2010-Ohio-606, ¶ 21, quoting *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, ¶ 6. "Under the doctrine of res judicata, '[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.' " *Kelm v. Kelm*, 92 Ohio St.3d 223, 227 (2001), quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995),

syllabus.  Furthermore, "[r]es judicata operates to bar litigation of ' "all claims which were or might have been litigated in a first lawsuit." ' "  (Emphasis omitted.)  *Id.*, quoting *Grava* at 382, quoting *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62 (1990).  The issue preclusion branch of res judicata estops a party from drawing into question in a second action a point or fact which was actually and directly at issue in a former action and was there passed on and determined by a court of competent jurisdiction.  *See Perry v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-571, 2012-Ohio-452, ¶ 19, citing *Grava*; *Norwood v. McDonald*, 142 Ohio St. 299, 306 (1943).

{¶ 10} Johnston makes no argument in this appeal that his claim for wrongful imprisonment based on actual innocence survives the 1993 judgment.  Nor does Johnston contend that the claim falls within an exception to the doctrine of res judicata.  Nevertheless, the state asserts that in addition to a claim that Johnston's release was the result of "an error in procedure," pursuant to the 2003 amendment of R.C. 2743.48(A)(5), the trial court declared Johnston a wrongfully imprisoned individual based on a claim of actual innocence.  In responding to the state's third assignment of error, Johnston's brief states, in relevant part, as follows:

> As far as [Johnston] can tell, the trial court never made the finding about which [the state] complains. * * * Moreover, recognizing that the 1993 decision may have issue preclusion/collateral estoppel effects, [Johnston] has, thus far, not attempted to satisfy condition five (5) of the wrongful imprisonment statute by asserting his innocence.
>
> However, [Johnston's] innocence is nonetheless relevant because, in addition to showing the equities of the situation, it helps to explain why "no criminal proceeding . . . can be brought, or will be brought . . . for any act associated with [his] conviction." * * * Nothing about the fact that Johnston failed (in 1993) to prove, by a preponderance of the evidence, that he satisfied condition five (5) prevents him from using evidence of his innocence for a different purpose now.

(Johnston's Brief, 46-48.)

{¶ 11} The trial court's "Final Judgment" reads, in relevant part, as follows:

> In Mr. Johnston's criminal case, after sentencing and during the term of his imprisonment, several errors of criminal procedure and violations of the Constitution were found by

> the Fourth District Court of Appeals, the Ohio Supreme Court, the Franklin County Court of Common Pleas, and the Tenth District.  Among these were <u>Brady</u> violations, improper use of testimony enhanced by hypnosis, and Due Process and Fourth Amendment violation.  As a result of these errors, Mr. Johnston was released from prison.  Thus, Mr. Johnston meets R.C. 2743.48(A)(5).

(Nov. 13, 2012 Final Judgment, 2.)

{¶ 12} The November 13, 2012 judgment does not contain any finding regarding actual innocence,[1] nor does the trial court's October 31, 2012 decision granting Johnston's motion for summary judgment.  Thus, we agree with Johnston's interpretation of the trial court judgment in this case.  Our review of both the trial court's November 13, 2012 judgment entry and the October 31, 2012 decision granting Johnston's motion for summary judgment reveals that the trial court never declared Johnston to be a wrongfully imprisoned individual based on a claim of actual innocence under R.C. 2743.48(A)(5).  Therefore, the record does not support the trial court error alleged by the state's third assignment of error.  *See* App.R. 12(A)(2) and 16(A)(3).

{¶ 13} For the foregoing reasons, the state's third assignment of error is overruled.

**B.  Fifth Assignment of Error**

{¶ 14} Because it is dispositive of the state's remaining assignments of error, we will next address the state's fifth assignment of error.  In this assigned error, the state contends the trial court committed reversible error by declaring that Johnston satisfied the fifth prong of the wrongful imprisonment statute, R.C. 2743.48(A)(5).  As amended in 2003, R.C. 2743.48(A) provided, in relevant part, as follows:

> As used in this section and section 2743.49 of the Revised Code, a "wrongfully imprisoned individual" means *an individual who satisfies each of the following*:
>
> * * *
>
> (5) *Subsequent to sentencing and during or subsequent to imprisonment, an error in procedure resulted in the individual's release*, or it was determined by the court of

---

[1] With regard to the newly discovered evidence of Johnston's innocence, we note that the trial court specifically stated that such evidence was "immaterial."  (Oct. 31, 2012 Decision Granting Plaintiff's Cross-Motion for Summary Judgment, 7.)

> common pleas in the county where the underlying criminal action was initiated that the charged offense, including all lesser-included offenses, either was not committed by the individual or was not committed by any person.

(Emphasis added.)

{¶ 15} The state's fifth assignment of error alleges that the trial court erred when it determined that "[s]ubsequent to sentencing and during or subsequent to imprisonment, an error in procedure resulted in the individual's release." R.C. 2743.48(A)(5). We agree.

{¶ 16} Just weeks after this court issued its decision in *Johnston I*, the Supreme Court decided *Mansaray v. State*, 138 Ohio St.3d 277, 2014-Ohio-750, wherein the court interpreted the 2003 amendment to R.C. 2743.48(A)(5). In our April 24, 2014 memorandum decision on Johnston's application for en banc consideration, this court stated:

> [Johnston] directs this court to the recent decision of the Supreme Court of Ohio in *Mansaray v. State*, ___ Ohio St.3d ___, 2014-Ohio-750, rendered on March 5, 2014, after this court's decision in [*Johnston I*]. In *Mansaray*, the court held "when a defendant seeks a declaration that he is a wrongfully imprisoned individual and seeks to satisfy R.C. 2743.48(A)(5) by proving that an error in procedure resulted in his release, the error in procedure must have occurred subsequent to sentencing and during or subsequent to imprisonment." *Id.* at ¶ 12. Because [Johnston] relies upon alleged errors that occurred during trial, [the state] asserts that under *Mansaray*, [Johnston] cannot succeed in his current wrongful imprisonment claim. Although [the state] asserted in its fifth assignment of error that the errors herein alleged by [Johnston] are not the sort of errors in procedure contemplated by R.C. 2743.48(A)(5), our decision analyzed only retroactivity. Accordingly, we will not consider *Mansaray*'s application to this case.

(Apr. 24, 2014 Memorandum Decision, fn. 1.) Because the Supreme Court in *Johnston II* directed this court to "address the assignments of error it previously determined moot,"

we must now consider the *Mansaray* decision in reviewing the assignments of error.[2] *Johnston II* at ¶ 25.

{¶ 17} In *Mansaray*, Yanko Mansaray was released from prison when the Eighth District Court of Appeals reversed his convictions on drug and weapons charges because the evidence found in Mansaray's residence was the product of an illegal search. *Id.* at ¶ 4. Mansaray subsequently filed a civil action alleging that he was a wrongfully imprisoned individual because an error in procedure had resulted in his release. The trial court dismissed Mansaray's wrongful imprisonment complaint but the court of appeals reversed, concluding that Mansaray satisfied all five requirements of R.C. 2743.48(A)(1) through (5). *Id.* More particularly, the Eighth District found that "the trial court's denial of Mansaray's motion to suppress, which was subsequently found to be improper, constitutes an error in procedure under R.C. 2743.48(A)(5)."[3] The state appealed, and the Supreme Court accepted jurisdiction.

{¶ 18} The Supreme Court's analysis in *Mansaray* focused on whether Mansaray qualified as a wrongfully imprisoned individual under the 2003 amendment to R.C. 2743.48(A)(5). The court noted that, pursuant to the 2003 amendment, " '[t]he fifth factor of R.C. 2743.48(A) may be fulfilled in one of two ways: (1) subsequent to sentencing and during or subsequent to imprisonment "an error in procedure resulted in the individual's release" or (2) the charged offense (and any lesser included offense) was not committed by the individual or no crime was committed at all (actual innocence).' " *Id.* at ¶ 7, quoting *Doss v. State*, 135 Ohio St.3d 211, 2012-Ohio-5678, ¶ 12.

{¶ 19} The state argued that the subsequent event referred to in amended R.C. 2743.48(A)(5) must be an error in procedure that occurs after sentencing and during or after imprisonment. Mansaray argued that the subsequent event is the judicial determination that a procedural error occurred, even if that error occurred prior to sentencing and imprisonment. In adopting the state's position, the Supreme Court reasoned as follows:

---

[2] In the appeal to the Supreme Court of Ohio in *Johnston II*, the parties cited the newly released *Mansaray* case both in their briefs and in oral argument, but the Supreme Court did not determine the impact of the *Mansaray* decision on the appeal because it had not accepted a proposition of law related to the *Mansaray* case. *Johnston II* at ¶ 15.
[3] *Mansaray v. State*, 8th Dist. No. 98171, 2012-Ohio-3376, ¶ 17.

The state's version is the meaning that is obvious and common in large part because in the state's version, the introductory phrase modifies "error in procedure," the noun phrase closest to it. *Youngstown Club v. Porterfield*, 21 Ohio St.2d 83, 86, 255 N.E.2d 262 (1970). In Mansaray's version, the introductory phrase modifies a noun phrase that doesn't appear in the statute: "a judicial determination that an error in procedure occurred."

Nothing in the statute indicates that the General Assembly intended to open the state to liability for wrongful imprisonment when a conviction is reversed based on a procedural error that occurred prior to sentencing. Mansaray's interpretation would greatly expand the ability of defendants to seek compensation for wrongful imprisonment. If that is indeed what the General Assembly intended, it did a remarkable job of keeping it to itself—and it will be able to enact such legislation upon learning that we do not think that it has already done so.

*Id.* at ¶ 9-10.

{¶ 20} Accordingly, the *Mansaray* court expressly concluded that "when a defendant seeks a declaration that he is a wrongfully imprisoned individual and seeks to satisfy R.C. 2743.48(A)(5) by proving that an error in procedure resulted in his release, the error in procedure must have occurred subsequent to sentencing and during or subsequent to imprisonment." *Id.* at ¶ 12.

{¶ 21} In this case, the Supreme Court reversed Johnston's convictions in 1988 "because the trial court had abused its discretion in permitting a witness to testify about his posthypnosis recollection and the state had committed a *Brady* violation, * * * by failing to disclose evidence that suggested that the victims may have been murdered at a location different from that alleged by the state and that someone else may have been responsible for the murders." *Johnston II* at ¶ 6, citing *State v. Johnston*, 39 Ohio St.3d 48 (1988). On remand, the trial court suppressed certain statements made by Johnston, ruled that the posthypnosis testimony of another witness would not be admitted at trial, and excluded other physical evidence. This court subsequently affirmed the trial court's rulings. *See State v. Johnston*, 64 Ohio App.3d 238 (10th Dist.1990). In May 1990, the state dismissed the indictment.

{¶ 22} The wrongful imprisonment cases decided since *Mansaray* confirm this court's initial impression that the errors that resulted in Johnston's release did not occur s*ubsequent to sentencing and during or subsequent to imprisonment* as is required to satisfy R.C. 2743.48(A)(5). *See*, *e.g.*, *D'Ambrosio v. State*, 139 Ohio St.3d 1416, 2014-Ohio-2487 (under *Mansaray*, the reversal of a conviction because of a *Brady* violation that occurred at trial does not qualify as an "error in procedure" for purposes of R.C. 2743.48(A)(5)); *Hill v. State*, 139 Ohio St.3d 451, 2014-Ohio-2365 (under *Mansaray*, the reversal of a conviction because the trial court erred in denying a motion to suppress evidence obtained in violation of an individual's Fourth Amendment rights does not qualify as an "error in procedure" for purposes of R.C. 2743.48(A)(5)); *Holloway v. State*, 8th Dist. No. 100586, 2014-Ohio-2971, ¶ 18 (under *Mansaray*, the reversal of a conviction because of erroneous admission of hearsay evidence at trial does not qualify as an "error in procedure" for purposes of R.C. 2743.48(A)(5)); *Worley v. State*, 8th Dist. No. 100200, 2014-Ohio-1429 (under *Mansaray*, an error in admitting testimony that constituted a confrontation clause violation during the trial did not qualify as a procedural error occurring subsequently to sentencing). The undisputed evidence in this case establishes the errors that resulted in Johnston's release occurred at his criminal trial and not "[s]ubsequent to sentencing and during or subsequent to imprisonment." R.C. 2743.48(A)(5). On this record, Johnston cannot satisfy the requirements of R.C. 2743.48(A)(5) as a matter of law. Johnston's failure to satisfy each of the requirements of R.C. 2743.48 is fatal to his wrongful imprisonment claim. *Dunbar v. State*, 136 Ohio St.3d 181, 2013-Ohio-2163, ¶ 21; *Doss* at ¶ 22.

{¶ 23} In concluding that the Brady violation qualifies as an "error in procedure" for purposes of R.C. 2743.48(A)(5), the dissent adopts the same logic rejected by the *Mansaray* court. In *Mansaray*, the Supreme Court of Ohio found that a conviction secured by the state based on illegally obtained evidence was an "error in procedure" that occurred at trial and not on the subsequent judicial determination that the evidence was inadmissible. *Id.* at ¶ 14 ("we cannot conceive of a situation in which a denial of a motion to suppress evidence would occur subsequent to sentencing and during or subsequent to imprisonment"). The dissent now employs the same flawed logic in contending that the *Brady* violation that resulted in Johnston's release did not result in an "error in

procedure" until the state dismissed the charges against Johnston following reversal of his conviction.

{¶ 24} Moreover, the Supreme Court of Ohio rejected a similar claim when it summarily reversed the decision of the Eighth District Court of Appeals in *D'Ambrosio v. State,* 8th Dist. Cuyahoga No. 99520, 2013-Ohio-4472. The Court of Appeals in *D'Ambrosio* had determined that "there was an error in procedure from both the *Brady* violations at trial and the state's repeated due process violations during the extended 180-day period for retrial that resulted in the district court's March 3, 2010 bar to reprosecution." *Id.* at ¶ 28. On appeal, the Supreme Court of Ohio summarily reversed the decision of the Eight District Court of Appeals on the authority of *Mansaray*. *D'Ambrosio*, 2014-Ohio-2487. Thus, under *Mansaray,* the postconviction due process violation advocated by the dissent is not a qualifying "error in procedure" for purposes of R.C. 2743.48(A)(5).

{¶ 25} On the authority of *Mansaray*, Johnston's claim for wrongful imprisonment is barred as a matter of law. Accordingly, the trial court erred when it granted Johnston's motion for summary judgment and declared him a wrongfully imprisoned individual. The state's fifth assignment of error is sustained.

## C. First and Fourth Assignments of Error

{¶ 26} In its first assignment of error, the state argues that the trial court erred when it determined that Johnston's cause of action for wrongful imprisonment under the 2003 amendment to R.C. 2743.48(A)(5) did not accrue until the effective date of the 2003 amendment. In the state's fourth assignment of error, it argues that the trial court erred when it determined that no criminal proceeding can be brought against Johnston for any act associated with his conviction as required by R.C. 2743.48(A)(4).

{¶ 27} Having determined that *Mansaray* bars Johnston's claim for wrongful imprisonment based on an error in procedure and having further determined that the trial court did not declare Johnston a wrongfully imprisoned individual based on a claim of actual innocence, the state's first and fourth assignments of error are rendered moot. *See* App.R. 12(A)(1)(c); *Mansaray* at ¶ 5; *Worley* at ¶ 16.

## IV. CONCLUSION

{¶ 28} For the foregoing reasons, we overrule the state's third assignment of error, sustain the state's fifth assignment of error, and find the state's first and fourth assignments of error moot. Accordingly, we reverse the judgment of the Franklin County Court of Common Pleas and remand this cause for further proceedings consistent with this decision.

*Judgment reversed;*
*cause remanded.*

LUPER SCHUSTER, J., concurs.
BRUNNER, J., concurs in part and dissents in part.

BRUNNER, J., concurring in part and dissenting in part.

{¶ 29} I concur with the majority in overruling the State's third assignment of error, but I respectfully dissent from the majority's decision as to the State's fifth assignment of error and would not render as moot the State's first and fourth assignments of error. This opinion is limited to discussing my difference with the majority on the State's fifth assignment of error, and I would reserve any discussion I may have concerning the first and fourth assignments of error until they may become relevant to the court's decision.

{¶ 30} I respectfully dissent from the decision of the majority as to the State's fifth assignment of error because I would interpret that, under *Mansaray v. State*, 138 Ohio St.3d 277, 2014-Ohio-750, Johnston does and can meet the fifth requirement of R.C. 2743.48 and that he is, thus, entitled under this prong to institute a civil action against the State for wrongful imprisonment under R.C. 2743.48. Respectfully, *Mansaray,* applied to Johnston's particular situation, does not dictate the result reached by the majority but, in fact, dictates the opposite result as to the fifth prong. *Mansaray* has been interpreted by the Eighth District Court of Appeals as specifically applying to the fifth prong, the issue at the heart of Johnston's case in this appellate review. *See Beckwith v. State*, 8th Dist. No. 101695, 2015-Ohio-1030, ¶ 22.

{¶ 31} In reviewing the grant of summary judgment by the trial court, Civ.R. 56(C) requires that in our de novo review we determine whether the trial court properly determined that: (1) no genuine issue of material fact exists, (2) the moving party is

entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in that party's favor. *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). Clearly, at this juncture of Johnston's extensive litigation journey, there is little to no dispute of facts, and the crux issue is whether he can show under *Mansaray* that, " 'subsequent to sentencing and during or subsequent to imprisonment, an error in procedure resulted in * * * [his] release.' " *Id.* at ¶ 6, quoting R.C. 2743.48(A)(5). *Mansaray* was decided by the Supreme Court of Ohio after we decided the State's appeal in *Johnston v. State*, 10th Dist. No. 12AP-1022, 2014-Ohio-1452 ("*Johnston I*"). Johnston argued in his reply brief before the Supreme Court (http://supremecourt.ohio.gov/pdf_viewer/pdf_viewer.aspx?pdf= 756370.pdf) that the Supreme Court's holding in *Mansaray* does not prevent Johnston from establishing the fifth prong of R.C. 2743.48. The Supreme Court remanded Johnston's case to this Court in part to decide this issue. *Johnston I.*

{¶ 32} R.C. 2743.48 sets forth five requirements for entitling an individual to seek compensation from the state for wrongful imprisonment:

> (A) As used in this section and section 2743.49 of the Revised Code, a "wrongfully imprisoned individual" means an individual who satisfies each of the following:
>
> (1) The individual was charged with a violation of a section of the Revised Code by an indictment or information, and the violation charged was an aggravated felony or felony.
>
> (2) The individual was found guilty of, but did not plead guilty to, the particular charge or a lesser-included offense by the court or jury involved, and the offense of which the individual was found guilty was an aggravated felony or felony.
>
> (3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.
>
> (4) The individual's conviction was vacated, dismissed, or reversed on appeal, the prosecuting attorney in the case

cannot or will not seek any further appeal of right or upon leave of court, and no criminal proceeding is pending, can be brought, or will be brought by any prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation against the individual for any act associated with that conviction.

(5) Subsequent to sentencing and during or subsequent to imprisonment, an error in procedure resulted in the individual's release, or it was determined by the court of common pleas in the county where the underlying criminal action was initiated that the charged offense, including all lesser-included offenses, either was not committed by the individual or was not committed by any person.

(Emphasis added.)

{¶ 33} There is no factual disagreement between the parties that material, exculpatory evidence was withheld from Johnston in violation of *Brady v. Maryland,* 373 U.S. 83 (1963), and that dismissal of the charges against Johnston did not occur until well after Johnston's sentencing and imprisonment.  The exculpatory evidence withheld in violation of *Brady* included evidence that the murders may have occurred at a location other than Johnston's farm and that another person may have been responsible for the victims' deaths.  On review of the Fourth District Court of Appeals' direct appellate review of Johnston's murder convictions, the Supreme Court explicitly stated, "When the prosecution withholds material, exculpatory evidence in a criminal proceeding, it violates the due process right of the defendant under the Fourteenth Amendment to a fair trial."  *State v. Johnston*, 39 Ohio St.3d 48, 60 (1988).  When an issue is raised and addressed on a direct appeal, it becomes the law of the case. *State v. Ikharo*, 10th Dist. No. 10AP-967, 2011-Ohio-2746, ¶ 5.  Further,

Pursuant to the "law of the case" doctrine, this court's conclusion in defendant's direct appeal remains the law of the case on that issue for all subsequent proceedings in the case and thus controls our decision in the present appeal.  *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 11 Ohio B. 1, 462 N.E.2d 410.

*State v. Ikharo*, 10th Dist. No. 05AP-167, 2005-Ohio-6616, ¶ 9.  The "law of the case" doctrine requires that we hold that the State's *Brady* violations of Johnston's right to a fair trial constitutes the deprivation of his right to due process.  *Id.*

{¶ 34} We have recently cited *Johnston* in support of a *Brady* violation constituting a due process deprivation, and, further, we have stated that such a violation *requires dismissal*:

> If evidence is materially exculpatory, its suppression violates a defendant's *due process rights*, and *requires dismissal of the charge. State v. Glunt*, 10th Dist. No. 09AP-962, 2010-Ohio-3024, ¶ 9, citing *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988).

(Emphasis added.) *State v. Daniels*, 10th Dist. No. 14AP-326, 2015-Ohio-2649, ¶ 17. Thus, our prior precedent on this issue is not only that suppressing materially exculpatory evidence violates due process but that, if found, it *requires dismissal*.

{¶ 35} In Johnston's case, the charges were dismissed well after his sentencing and imprisonment—not until May 11, 1990. It is the late act of dismissal resulting in Johnston's release that constitutes the error under the statute, not any judicial determination.

> Nothing in the language of the statute suggests, even indirectly, that the subsequent *event* is a judicial determination than [sic] an error occurred.

(Emphasis added.) *Mansaray* at ¶ 9. Under *Mansaray*, Johnston satisfies the fifth prong of R.C. 2743.48.

{¶ 36} The majority labels this analysis as "flawed logic." (Majority Decision at ¶ 23.) Based on the procedural history of this case, the prosecutor and not the trial court dismissed the charges. The charges should have been dismissed long before they were; the error occurred at the time of dismissal, and this is the distinction that meets the narrow confines of the fifth prong of the statute as interpreted by the Supreme Court in *Mansaray*. Johnston can meet these narrowest of qualifications and should be permitted to proceed to the next step. Moreover, a reading of *D'Ambrosio v. State*, 8th Dist. No. 99520, 2013-Ohio-4472, overruled by the Supreme Court in *D'Ambrosio v. State*, 139 Ohio St.3d 1416, 2014-Ohio-2487, indicates that much of the litigation in that case occurred in federal court through a writ of habeas corpus, with the trial court having dismissed the charges. A trial court's error is determined only upon a subsequent judicial

determination. The act of dismissing an indicted offense is an act of discretion by a prosecutor. This is a critical distinction that should allow Johnston to proceed.

> Dismissal of criminal charges by the prosecution is governed by Crim.R. 48(A), which states: "The state may by leave of court and in open court file an entry of dismissal of an indictment, information, or complaint and the prosecution shall thereon terminate." Thus, the prosecution has discretion, with permission of the court, to determine when and which charges should be dropped.

*State v. Jones*, 8th Dist. No. 101311, 2015-Ohio-1818, ¶ 31.

{¶ 37} Thus, we should find that Johnston does, as a matter of law, meet the fifth prong required under R.C. 2743.48 for a civil action for having been wrongfully imprisoned. Therefore, we should address the State's first and fourth assignments of error and determine at that point whether we may affirm the judgment of the trial court.

_____